110 Wn.2d 114 (1988)
750 P.2d 1240
PUBLIC UTILITY DISTRICT No. 1 OF CLARK COUNTY, Petitioner,
v.
THE PUBLIC EMPLOYMENT RELATIONS COMMISSION, ET AL, Respondents.
No. 53032-7.
The Supreme Court of Washington, En Banc.
March 3, 1988.
Davis, Wright, Todd, Riese & Jones, by Stephen M. Rummage and Thomas A. Lemly, for petitioner.
Kenneth O. Eikenberry, Attorney General, and Richard A. Heath, Senior Assistant, for respondent State.
Richard D. Eadie, for respondent Union.
Hugh Hafer and John Burroughs on behalf of International Brotherhood of Electrical Workers, amici curiae for petitioner.
ANDERSEN, J.

FACTS OF CASE
At issue here is whether the Public Employment Relations Commission (PERC) has jurisdiction over labor disputes between public utility districts and their employees.
International Federation of Professional and Technical Engineers, Local 17, AFL-CIO, filed a complaint with PERC alleging that Public Utility District No. 1 of Clark County had engaged in unfair labor practices. The District sought dismissal of the charge on the grounds that PERC lacked jurisdiction over public utility districts. PERC responded with a declaratory ruling holding that it had *116 jurisdiction over the District by virtue of RCW 41.56. PUD 1 v. International Fed'n of Professional & Technical Eng'rs, Local 17, Pub. Empl. Relations Comm'n Dec. 2125 PECB (1985). The District then sought review of this ruling in Thurston County Superior Court. The court granted the District's motion to certify the case to the Court of Appeals pursuant to RCW 34.04.133, and the Court of Appeals granted review. We, in turn, then granted Local 17's motion to transfer review to this court.[1]
One issue is presented.

ISSUE
Does RCW 41.56.020 exclude public utility districts from PERC's jurisdiction?

DECISION
CONCLUSION. RCW 41.56.020 clearly states that the Public Employees' Collective Bargaining Act applies to public utility districts except where the Act conflicts with the statutes expressly referred to.
The Public Employees' Collective Bargaining Act (the Act)[2] was passed by the 1967 Legislature.[3] The purpose of the enactment was, and still is, to provide "a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers."[4] In a number of respects, the Act is similar to the National Labor Relations Act.[5]
At the time the Legislature was debating this legislation, there were already a few state statutes that gave certain *117 bargaining rights to some employees of municipal corporations. Employees who already had such rights were those employed by the Washington toll bridge authority (former RCW 47.64.030 and.040),[6] public utility districts (RCW 54.04.170 and.180)[7] and school districts (former RCW 28A.72.010-.090).[8]
The 1967 Legislature was at the same time also working on other legislation which would provide bargaining rights to port district employees. That legislation was finally enacted at that same session, as RCW 53.18.[9]
As the bill to create the Act itself made clear, particularly when considered with the amendments added in the House of Representatives,[10] the Legislature was understandably concerned lest the legislation it was enacting would inadvertently repeal or conflict with existing statutes that extended bargaining rights to some municipal employees, or with the bargaining rights it was extending to port employees by separate legislation. To this end, the Legislature wrote the following italicized language into the Act:
This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington except as otherwise provided by RCW 47.64.030, 47.64.040, 54.04.170, 54.04.180, 28.72.010 through 28.72.090, and chapter 53.18 RCW.

(Italics ours.) Former RCW 41.56.020.[11]
The meaning of the italicized language in the statute is what this case is all about. The District argues that this language amounts to an absolute exemption which exempts *118 all agencies covered by the statutes there referred to (including public utility districts) from PERC jurisdiction. PERC contends, on the other hand, that the italicized language amounts to only a limited exemption which exempts the agencies referred to in the statute only to the extent that the listed statutes pertaining thereto conflict with the Act (RCW 41.56).
[1, 2] The foregoing statute reads to us exactly as it reads to PERC, the agency now charged with administering it. As we have said many times in many ways, "where the language of a statute is clear and unambiguous, there is no room for judicial interpretation."[12] The statute in question says and means that "[t]his chapter shall apply ... except as otherwise provided by ..." the other statutes referred to. If the Legislature had intended the meaning ascribed to it by the District, it would have said "this chapter shall not apply to the agencies covered by" the statutes referred to, or used some equivalent language entirely excluding those agencies from the Act's coverage. This it did not do. Thus, we conclude that the Act applies to public utility districts except where the Act conflicts with the public utility district statutes referred to, RCW 54.04.170 and .180.
Four additional cogent reasons buttress this conclusion.
[3] First, as PERC notes in its written opinion in this case, "[i]n arguing that [the Act] does not apply at all to public utility districts the PUD first offers a grammatical exegesis on [RCW 41.56.020]. We do not find it persuasive. We read the words `... except as otherwise provided ...' as a prepositional phrase modifying the verb `apply'. Any broader construction reads the words `otherwise provided' out of the statute." We agree.
*119 [4] Second, the Act, "being remedial in nature, is entitled to a liberal construction to effect its purpose."[13] The District's proposed construction does just the reverse; it strictly construes the Act. It would deny Local 17 access to the machinery set up by the Act, including access to PERC's expertise and ability to decide and enforce the rights which Local 17 has under RCW 54.04.170-.180. Local 17 would be left without access to PERC. Thus, neither PERC nor any other agency would be available to decide questions concerning representation, the holding of elections, the certification of bargaining representatives or to hear unfair labor practice complaints such as the one Local 17 has filed in this case.
As Justice Utter succinctly expressed it in Nucleonics Alliance, Local 1-369 v. WPPSS, 101 Wn.2d 24, 35-36, 677 P.2d 108 (1984) (Utter, J., dissenting):
PERC jurisdiction is essential for enforcement of the labor laws, since neither the NLRB nor any other agency has jurisdiction over PUD's. While some labor law provisions are enforceable, others are essentially administrative tasks, such as supervising union elections and selecting bargaining units. Some administrative agency must have discretion to administer the applicable law.
Third, "[a] policy requiring liberal construction is a command that the coverage of an act's provisions be liberally construed and that its exceptions be narrowly confined."[14] Again, the District's interpretation would do just the opposite. That interpretation would not narrow the exceptions to the Act; it would broaden the RCW 41.56.020 exceptions to the point of completely denying Local 17 the protections afforded by the Act and the assistance of PERC.
[5] Fourth and finally, if any question should remain as to whether the RCW 41.56.020 exceptions are ambiguous, *120 that question is resolved by the principle that "[a] statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat the manifest object, it should receive the former construction."[15] The construction given by PERC is in accord with the Act's declared object of providing "a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers." (Italics ours.)[16] The District's proposed construction, on the other hand, is flatly at odds with the Act's legislatively declared object and leaves PUD employee-employer disputes to whatever resolution methods the employer is willing to agree to or else to a lawsuit, rather than to PERC with its expertise and ability to carry out the Act's mandate of uniform application of labor relations principles throughout public employment.
We do not perceive the views just stated as being inconsistent with the holdings of this court in Roza Irrig. Dist. v. State, 80 Wn.2d 633, 641, 497 P.2d 166 (1972) and Nucleonics. In Roza, we held that the words "municipal corporation" in RCW 41.56.020 were intended to cover irrigation districts. In Nucleonics, at 31, we held that the Washington Public Power Supply System (WPPSS) was not a public utility district and thus not within the exception clause of RCW 41.56.020. Although those two cases do contain dicta supporting the District's proposed construction in this case, neither case directly construed the critical phrase of the statute, "except as otherwise provided". More significantly, the court in both of those cases arrived at its decision on the basis of the same principle of liberal construction which we apply in this case.
*121 Nor do we perceive our analysis herein to be inconsistent with Port of Edmonds v. Public Empl. Relations Comm'n, 103 Wn.2d 331, 337, 692 P.2d 814 (1985), in which we held, based on an analysis of the statutory scheme and legislative history of RCW 41.56 and RCW 53.18, that PERC has no jurisdiction over port districts under the exception clause of RCW 41.56.020. RCW 53.18, the port district chapter of the code, contains procedures for its administration and is more detailed and comprehensive in its coverage than the bare collective bargaining provisions of RCW 54.04.170 and .180. Port of Edmonds is thus also distinguishable from the case before us.
In sum, based on a thorough consideration of all aspects of the matter, we conclude that the Legislature intended to place jurisdiction in PERC to regulate labor relations between public utility districts and their employees "except as otherwise provided by" public utility district law. Suggestions and dicta to the contrary notwithstanding,[17] PERC correctly held that it has jurisdiction over labor disputes between public utility districts and their employees under RCW 41.56.020.
Affirmed.
UTTER, BRACHTENBACH, CALLOW, and DURHAM, JJ., concur. DORE, J. (dissenting)
I dissent.
The job of this court is to deliberate, not to parse. The majority's opinion turns on its determination that the words "except as otherwise provided" in RCW 41.56.020 are "a prepositional phrase modifying the verb `apply'." Majority, at 118. As a matter of grammar, this is unassailable. As a matter of law, it could not matter less.
Where the court is faced with a newly minted statute, it may well have only the words of the act to rely on. Here, *122 the majority has before it over 20 years of judicial construction, agency action and legislative assent. Nevertheless, it treats the statute as an utterance out of the blue, the meaning of which is contained entirely in its wording. The majority's reasoning is empty, formalistic and unworthy of this court.
This is especially so because the grammarian's method conceals a blatant act of judicial legislation. The settled law in this state is that the Public Employment Relations Commission does not have jurisdiction over public utility districts. This fact has been accepted by all, including the Legislature, public employees' unions and PERC itself in prior appearances before this court. The court now works a substantial change in labor relations in this state on the basis of its parsing of a sentence. It gives its own pronouncements on the subject less weight than it ordinarily accords the interpretation of an agency charged with enforcing a statute, and fails to give the interpretation of the responsible agency any consideration at all. In effect, it encourages the mistaken impression that this court, rather than the Legislature, is the proper place to petition for assistance in labor relations. I cannot join in such a result.
The court's excursion into grammar and formal rules of statutory construction is simply unnecessary. This statute is not fresh from the printer. This court has already decided cases in which the issue of PERC jurisdiction has arisen. The court has always held that PERC has no jurisdiction over the entities mentioned in the exclusion clause of RCW 41.56.020 because the Public Employees' Collective Bargaining Act (hereinafter the Act) supersedes, and does not supplement, prior public employee statutes. To return now to the bare words of the statute and to conclude otherwise strikes me as remarkably unwise.
This court has considered the effect of the exceptive clause of RCW 41.56.020 on three separate occasions, and has consistently held that it excludes the listed entities from the jurisdiction of the Act.
*123 In Roza Irrig. Dist. v. State, 80 Wn.2d 633, 640, 497 P.2d 166 (1972), we considered whether a union negotiating with an irrigation district must be certified by the Department of Labor and Industries (the forerunner of PERC in administering the Act). The issue was framed as whether the District fell under the exceptions clause of RCW 41.56.020 or under the category of municipal corporation. The court held that the District was a municipal corporation, was subject to the Act and that the Department therefore was responsible for certifying the union. The clear premise of the court's opinion was that if the District fell within the exceptions it would be entirely outside the Department's jurisdiction.
It appears evident, however, that the legislature did not intend to include employees of the state itself, but rather employees at the local level, since state employees are not referred to in RCW 41.56.020 (except insofar as employees of the toll bridge authority may be regarded as state employees, that authority covered by RCW 47.64.030 and .040, being expressly exempted).
(Italics mine.) Roza, at 638.
In Nucleonics Alliance, Local 1-369 v. WPPSS, 101 Wn.2d 24, 677 P.2d 108 (1984), both PERC and the Washington Public Power Supply System argued that the Supply System was not a public utility district covered by RCW 54.04.170 and .180, and that it therefore fell outside the exemption clause of RCW 41.56.020. The court held that the Supply System was not exempt because it is not a public utility district. As in Roza, the court's basic premise was that a public utility district is exempt from the Act. That premise can hardly be characterized as dicta.
The majority argues that its result is not inconsistent with Roza and Nucleonics, because both cases apply "the same principle of liberal construction which we apply in this case." The "principle of liberal construction" referred to is presumably the rule that legislation should be broadly construed to accomplish the Legislature's intent. It escapes me how this principle is transformed into a rule that the *124 exceptions clause here should be narrowly construed. The exceptions to RCW 41.56.020 are as much a part of the Legislature's intent as any other part of the statute. Giving them a narrow construction defeats the Legislature's intent.
RCW 54.04.170 and .180 authorize collective bargaining for public utility districts and their employees. According to the majority, RCW 41.56 applies to the employees covered by RCW 54.04, except where sections .170 and .180 alone specifically conflict with RCW 41.56. It follows from the majority's argument, however, that the exemption contained in 41.56.020 is a nullity. No section of RCW 41.56 is inconsistent with RCW 54.04.170 or.180. The only part of RCW 41.56 which even addresses the same subject as those sections is RCW 41.56.040, and that section grants the same right of collective bargaining. Under the majority's interpretation, then, the Legislature has done a useless act. That is never a permissible interpretation. State v. Wanrow, 88 Wn.2d 221, 228, 559 P.2d 548 (1977).
In Port of Edmonds v. Public Empl. Relations Comm'n, 103 Wn.2d 331, 334, 692 P.2d 814 (1985), the question was whether a port district fell within PERC's jurisdiction. The Port argued that it did not, because the exceptions clause of RCW 41.56.020 cites RCW 53.18, which governs employee relations of port districts. The court agreed, and held that the Port was not within PERC's jurisdiction. The court did not so hold because RCW 53.18 specifically excludes port districts from PERC's jurisdiction. It does not. Instead, the Port fell outside the Act because, "The construction by the Roza court of RCW 41.56 and its exceptions indicates RCW 53.18 was intended to be an exception and not a complement to RCW 41.56 ..." 103 Wn.2d at 334. The same rule applies here. The Legislature's reference to the broad collective bargaining provisions of RCW 54.04.170 and.180 indicates an intent to supplant, not to complement the whole of RCW 41.56 as concerns public utility districts.
*125 The majority's contention that the case is distinguishable because "RCW 53.18 ... is more detailed and comprehensive in its coverage than the bare collective bargaining provisions of RCW 54.04.170 and .180", again ignores the fact that exempting only those sections from RCW 41.56 would be a useless act. The majority cannot have intended to exempt only those sections because it is those sections, more than any, which are not in conflict with RCW 41.56. Once again, relying on the wording of the statute alone is an unnecessarily crabbed approach to the construction of this statute and leads, in any event, to a flatly impermissible interpretation of the exemptions clause.
I see no reason to deviate now from our previous interpretation of the statute. What is more, the law of statutory interpretation in this state clearly indicates that we should not do so. It seems too obvious for argument that the construction this court places on a statute is as much a part of the law as the words of the statute themselves.
It is a familiar rule of statutory construction that when a statute has once been construed by the highest court of the state, that construction is as much a part of the statute as if it were originally written into it.
State v. Regan, 97 Wn.2d 47, 51-52, 640 P.2d 725 (1982). The purpose of statutory construction is always to infer the intent of the Legislature. But because the court is always guided by this rule, the court's own pronouncements on a statute have weight at least equal to the words of the statute itself.
The intent of the Legislature must be derived from the language of the act as a whole, together with the constructions placed on the statute by this court.
(Citations omitted.) Stewart Carpet Serv. v. Contractors Bonding & Ins. Co., 105 Wn.2d 353, 358, 715 P.2d 115 (1986). The majority's method, however, surrenders this court's role in developing the law of this state, and deprives this panel of the benefit of its predecessors' considered judgments regarding this statute. There is no justification *126 whatsoever for such an approach. The court should consider and follow its own previous interpretations of this statute, particularly in light of the fact that the Legislature has never deemed it necessary to change the statute so as to state a different rule.
The same reasoning applies to the interpretation of this statute by PERC itself. The long-standing rule in this state is that an agency's construction of the statute it administers is to be given "considerable weight" in interpreting the statute, and that this is especially true when the Legislature has subsequently reenacted the statute without overriding the agency's construction. Safeco Ins. Cos. v. Meyering, 102 Wn.2d 385, 391, 687 P.2d 195 (1984); Washington Educ. Ass'n v. Smith, 96 Wn.2d 601, 606, 638 P.2d 77 (1981); State ex rel. Pirak v. Schoettler, 45 Wn.2d 367, 371, 274 P.2d 852 (1954); Smith v. Northern Pac. Ry., 7 Wn.2d 652, 110 P.2d 851 (1941). Furthermore, a contemporaneous construction by the agency charged with administering an ambiguous statute is very persuasive if the Legislature not only fails to repudiate the construction, but also amends the statute in some other particular without disturbing the administrative interpretation. Green River Comm'ty College v. Higher Educ. Personnel Bd., 95 Wn.2d 108, 118, 622 P.2d 826 (1980), adhered to and modified, 95 Wn.2d 962, 633 P.2d 1324 (1981).
The Department of Labor and Industries, which originally administered the Act, apparently did not assert jurisdiction over public utility districts or the other entities controlled by statutes in RCW 41.56.020's exceptive clause. See Office & Professional Employees Int'l, Local 11 v. PUD 1, Pub. Empl. Relations Comm'n Dec. 1884 PECB, at 10-11 (1984). In 1976, PERC assumed responsibility for administering the Act, and likewise did not at first assert jurisdiction over public utility districts. Local 1823, Am. Fed'n of Teachers v. Eastern Wash. State College, Pub. Empl. Relations Comm'n Dec. 245 PECB, at 3 n. 1 (1977) ("RCW 41.56.020 excludes ... public utility district employees ...").
*127 PERC historically held, and indeed has argued to this court, that the exceptive clause of RCW 41.56.020 excepts public utility districts from the Act altogether; that RCW 54.04.170 and 54.04.180 supersede the Act, and that PERC therefore has no jurisdiction over public utility districts. Brief of Respondent, at 4-5 (PERC); Nucleonics Alliance, Local 1-369 v. WPPSS, 101 Wn.2d 24, 677 P.2d 108 (1984). The majority now holds just the reverse: that RCW 54.04.170 and 54.04.180 complement, rather than supersede, the Act; and that since those sections do not specifically say otherwise, PERC has jurisdiction over public utility district labor disputes.
The Legislature has considered bills and has enacted legislation modifying the Act, but failed to repudiate the consistent interpretation by PERC and this court that the Act does not apply to public utility districts. See, e.g., Laws of 1975, 1st Ex. Sess., ch. 296, § 1(3), p. 1327 (enacting RCW 41.58.005) (act creating PERC expressly does not expand existing jurisdiction of RCW 41.56); proposed House Bill 522, 42d Legislature (1971) (Labor and Employment Security Committee); proposed Senate Bill 3613, 47th Legislature (1981) (Commerce and Labor Committee); Laws of 1983, ch. 287.
It follows that this court should hesitate to disturb the settled understanding of the agency, the public and the Legislature which this court and the responsible agency have created over the last 20 years. Nevertheless, the majority feels compelled to do so by the laws of grammar.
The only possible explanation for the majority's reasoning seems to be that it is swayed by PERC's argument that the exception of the listed entities from its jurisdiction would leave those entities without a controlling administrative agency. This court is not the proper forum for those concerns. We should not engage in judicial legislation. Only the Legislature can modify the Act to bring public utility districts under PERC's jurisdiction, if and when it determines that public policy so mandates. When RCW 54.04.170 and .180 were passed in 1963, the Legislature did not *128 provide for any administrative agency to enforce or administer the newly created rights. Since 1963, public utility district employees have resorted to our courts to challenge unfair labor practices, and courts have determined their rights according to the law as it applies to private employees. See, e.g., Local 77, IBEW v. PUD 1, 40 Wn. App. 61, 63, 696 P.2d 1264 (1985). There is no indication in the record that this system has required public utility district employees to abandon their rights under RCW 54.04.170.180.

CONCLUSION
The majority opinion usurps the autonomy of the public utility districts by granting supervisory control over their employees to a state agency,[18] whose members are appointed by the Governor, which eventually may mean control by their competitors. This disastrous result should not be allowed through judicial legislation.
I dissent.
PEARSON, C.J., and DOLLIVER and GOODLOE, JJ., concur with DORE, J.
Reconsideration denied June 16, 1988.
NOTES
[1] RAP 4.2.
[2] RCW 41.56; see RCW 41.56.900.
[3] Laws of 1967, 1st Ex. Sess., ch. 108.
[4] RCW 41.56.010.
[5] 29 U.S.C. §§ 151-169 (1976).
[6] Laws of 1949, ch. 148, § 3, p. 373.
[7] Laws of 1963, ch. 28, §§ 1, 2.
[8] Laws of 1965, ch. 143, §§ 1-9.
[9] Laws of 1967, ch. 101, §§ 1-6.
[10] House Journal, 40th Legislature, 1st Ex. Sess. (1967), at 1492.
[11] Laws of 1967, 1st Ex. Sess., ch. 108, § 2, p. 1885.
[12] Roza Irrig. Dist. v. State, 80 Wn.2d 633, 635, 497 P.2d 166 (1972). Accord, King Cy. v. Seattle, 70 Wn.2d 988, 991, 425 P.2d 887 (1967), citing other cases.
[13] Roza, at 639. Accord, International Ass'n of Firefighters, Local 469 v. Yakima, 91 Wn.2d 101, 109, 587 P.2d 165 (1978); Nucleonics Alliance, Local 1-369 v. WPPSS, 101 Wn.2d 24, 29, 677 P.2d 108 (1984).
[14] Nucleonics, at 29.
[15] Roza, at 637-38, citing 2 J. Sutherland, Statutory Construction § 4704 (3d ed. 1943). Accord, State v. Lee, 62 Wn.2d 228, 233, 382 P.2d 491 (1963).
[16] RCW 41.56.010 (part).
[17] See Port of Edmonds v. Public Empl. Relations Comm'n, 103 Wn.2d 331, 334, 692 P.2d 814 (1985); Nucleonics, at 29-31; Roza, at 640.
[18] RCW 41.58.010 states that "[t]he commission shall consist of three members who shall be citizens appointed by the governor by and with the advice and consent of the senate."