[No. 57493-6.   En Banc.   January 2, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. STEVEN MIZELL HOPPER, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for petitioner.

*Lenell Nussbaum,* for respondent.

*Seth R. Dawson, Prosecuting Attorney for Snohomish County,* and *Seth Aaron Fine, Deputy,* amicus curiae for petitioner.

DURHAM, J. — This case deals with the sufficiency of an information charging assault challenged for the first time on appeal. Applying our recently announced decision in *State v. Kjorsvik,* 117 Wn.2d 93, 812 P.2d 86 (1991), we hold that the charging document was complete, and affirm the conviction.

Steven Hopper was arrested on June 30, 1988. While on patrol, Seattle Police Officer David Shelton and his partner observed Hopper who appeared to be having a physical altercation with a woman. The police officers approached Hopper and directed him to release the woman. When he refused to release her, he was arrested. In the course of the arrest, Hopper struggled, grabbed Officer Shelton's flashlight and struck him with it.

Initially, Hopper was charged with third degree assault for assaulting Officer Shelton with intent to prevent and resist a lawful arrest. He was also charged with simple assault involving the woman. The State moved to amend the information to charge both second and third degree assault, but the trial court did not allow that amendment. The State introduced a second amended information, at

issue here, which charged one count of second degree assault and one count of simple assault. It read in part:

That the defendant Steve Mizell Hopper, in King County, Washington, on or about June 30, 1988 did assault Officer D. Shelton, a human being, with a ~~deadly~~ [*sic*] weapon, and other instrument or thing likely to produce bodily harm, to-wit: a flashlight;

Contrary to RCW 9A.36.021(1)(a), (1)(c), and against the peace and dignity of the state of Washington.

At trial, Hopper was acquitted of the simple assault, and the jury was unable to reach a verdict on the second degree assault.

On June 30, 1988, the effective statute was former RCW 9A.36.020, whereas RCW 9A.36.021 did not go into effect until July 1, 1988. Under former RCW 9A.36.020(1)(c),[1] a person is guilty of second degree assault when he or she "[s]hall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm".

At a second trial, the jury was instructed that it could convict if it found that Hopper "knowingly assaulted Officer Shelton with a weapon or other instrument or thing likely to produce bodily harm." Hopper was convicted of second degree assault.

On appeal, the Court of Appeals reversed the conviction. *State v. Hopper*, 58 Wn. App. 210, 213, 792 P.2d 171 (1990). The court held that the information was insufficient because it omitted the statutory element "knowingly". The court applied the rule, expressed in *State v. Holt*, 104 Wn.2d 315, 320, 704 P.2d 1189 (1985), that if *any* statutory element is omitted, the charging document is constitutionally defective, and the charges must be dismissed. *Hopper*, 58 Wn. App. at 212. The court found that the element was missing, and that no facts supporting the element of knowledge were contained in the information. *Hopper*, at 213 (citing *State v. Leach*, 113 Wn.2d 679, 689, 782 P.2d 552 (1989)). The dissent relied on *State v. Bailey*, 114 Wn.2d 340, 348, 787 P.2d

---

[1]Former RCW 9A.36.020(1)(a) involves the unlawful administering of poison, which is obviously not applicable here.

1378 (1990), and urged that the information be upheld in the absence of prejudice. *Hopper*, at 214 (Webster, J., dissenting). Review was granted. We now reverse the Court of Appeals, and reinstate the conviction.

Hopper contends that the information here is deficient in two respects. First, it omits explicit reference to the "knowledge" element of second degree assault. Second, it cites a statute not in effect at the time of the acts alleged. He raises these deficiencies for the first time on appeal.

■ Any analysis of the reach of the Sixth Amendment and Const. art. 1, § 22 (amend. 10) should begin with the minimum requirement that all essential elements of a crime, statutory and nonstatutory, must be included in the charging document so as to apprise the defendant of the charges against him and to allow him to prepare his defense. *Kjorsvik*, 117 Wn.2d at 102. However, when, as is the case here, the sufficiency of a charging document is not challenged until appeal, we apply a stricter standard of review. *Kjorsvik*, at 105. This rule has its roots in United States Supreme Court cases and is utilized frequently by federal courts. In *Hagner v. United States*, 285 U.S. 427, 433, 76 L. Ed. 861, 52 S. Ct. 417 (1932), the Court first expressed its view:

> Upon a proceeding after verdict at least, no prejudice being shown, it is enough that the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment.

The Court made it clear that the essential elements must still be charged. *Hagner*, 285 U.S. at 433. Loosely or unartfully drawn charging documents, however, would henceforth be forgiven on appeal. *Hagner*, 285 U.S. at 433.

Thus, charging instruments which fail to set forth the essential elements of a crime in such a way that the defendant is notified of both the illegal conduct and the crime with which he is charged are constitutionally defective, and require dismissal. *See Kjorsvik*, at 102. However, when a deficiency is raised for the first time on appeal, this court should examine the document to determine if there is any

fair construction by which the elements are all contained in the document. *Kjorsvik*, at 105. In addition, if the document can be upheld on this basis, it must also be determined that the defendant has suffered no prejudice as a result of the ambiguous or vague language in the information. *Kjorsvik*, at 105-06. If the accused can show that he or she actually lacked the requisite notice to prepare an adequate defense, the conviction should be dismissed.

■ This stricter standard, to be used when the sufficiency of an indictment is challenged initially on appeal, permits a court to construe a charging document quite liberally. If the information contains allegations that express the crime which was meant to be charged, it is sufficient even though it does not contain the statutory language. *United States v. Caldwell*, 544 F.2d 691, 695 (4th Cir. 1976). A court should be guided by common sense and practicality in construing the language. *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976). Even missing elements may be implied if the language supports such a result. *Kaneshiro v. United States*, 445 F.2d 1266, 1269 (9th Cir. 1971).

■ Hopper argues that the strict standard of review should not be utilized because Washington provides broader protection than the federal constitution. He relies on *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986). This argument lacks merit. First, Washington courts have frequently treated the Sixth Amendment and Const. art. 1, § 22 (amend. 10) as containing the same protection. *See, e.g.*, *Leach*, 113 Wn.2d at 695; *State v. Bergeron*, 105 Wn.2d 1, 18 n.41, 711 P.2d 1000 (1985); *State v. Strong*, 56 Wn. App. 715, 717, 785 P.2d 464, *review denied*, 114 Wn.2d 1022 (1990). Second, if anything, the United States Constitution's requirements are actually broader than the state protection. In addition to Sixth Amendment protection, providing a defendant with the right to notice of the charges against him, the Fifth Amendment confers the right to be indicted by a grand jury. *Stirone v. United States*, 361 U.S. 212, 215, 4 L. Ed. 2d 252, 80 S. Ct. 270 (1960); *United States v. Shoup*, 608 F.2d 950,

960 (3d Cir. 1979). The right to a grand jury indictment entails a more stringently drafted charging document than is required by the Sixth Amendment. *See Shoup*, at 960. Clearly, no broader rights are afforded by the Washington Constitution.

Hopper's contention could, however, derive support from this court's application of the "common understanding" rule. *See Kjorsvik*, at 114 (Utter, J., dissenting). In *State v. Moser*, 41 Wn.2d 29, 31, 246 P.2d 1101 (1952), this court held that: "There is no presumption in favor of a pleading charging a crime. Such a pleading must be definite and certain." *Moser* followed *State v. Unosawa*, 29 Wn.2d 578, 589, 188 P.2d 104 (1948), in its holding that the "common understanding" rule could not be applied unless it had first been determined that the information contained all the statutory elements of the particular crime involved. *Moser*, at 31-32. The common understanding rule would allow the court to determine that an information was sufficient "if a person of common understanding can, from the allegations of the information, know the exact nature of the charge against him." *Unosawa*, at 589. Thus, the common understanding rule proposed a more liberal construction of the charging document.

The application of the strict standard of review does not upset this line of cases. Here, too, the court would be constrained by the essential elements rule, and would only uphold informations which contained the elements of the crime involved. The standard of review merely states the proper method of interpretation; it does not alter the requirements for sufficiency. It is a rule of construction only. Therefore, if a document does not contain the elements of the crime, the most liberal possible reading cannot cure it.

Conversely, the State urges us to rely on *State v. Bailey*, 114 Wn.2d 340, 348, 787 P.2d 1378 (1990), to find that any omission of an element was harmless error. *See Hopper*, 58 Wn. App. at 213-15 (Webster, J., dissenting). There, this court affirmed a conviction of indecent liberties, even though the essential element of nonmarriage was omitted from the information, which had charged statutory rape of a

3-year-old girl. The court contended that the "omission was harmless beyond a reasonable doubt." *Bailey*, at 348. Here, we need not consider if harmless error applies in cases such as these, since we find that no error occurred.[2]

Applying the stricter standard of review to the facts before us, we first scrutinize the charging document to determine if, by fair construction, it can be understood to contain the essential elements of second degree assault. Those elements can be found in former RCW 9A.36.020:

> (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:
> . . .
> (c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm[.]

Here, the information said, in part, "that the defendant . . . did assault Officer D. Shelton . . . with a weapon . . .."

■ Although the word "knowingly" does not appear, the language of the information does include all the essential elements of second degree assault. When construed liberally, the term "assault" contains within it the concept of knowing conduct. The definition of "assault" is a willful act. *Webster's Third New International Dictionary* 130 (1971). This court has previously said that language alleging assault contemplates knowing, purposeful conduct. *State v. Osborne*, 102 Wn.2d 87, 94, 684 P.2d 683 (1984); *see also United States v. Morrison*, 536 F.2d 286, 288 (9th Cir. 1976). "The word 'assault' is not commonly understood as referring to an unknowing or accidental act." *Osborne*, at 94. A recent Court of Appeals decision reached the same conclusion. *State v. Weiding*, 60 Wn. App. 184, 188-89, 803 P.2d 17

---

[2]We note that the stricter standard of review adopted in *Kjorsvik* is wholly consistent with the reasoning of *Bailey*. In *Bailey*, the stricter standard of review would have been appropriate. The question, then, is whether all the elements were contained within the charging document, or could be found within its terms by fair construction. The allegation that the victim was a 3-year-old could easily be read to include the element of nonmarriage. Moreover, the defendant could not be said to have been prejudiced by the omission, since there was no possibility that he would offer as a defense that he was indeed married to the victim.

(1991) (holding that "did assault" met the essential elements rule). *But see State v. Robinson*, 58 Wn. App. 599, 606, 794 P.2d 1293 (1990) (holding that a citation for fourth degree assault which did not contain the element of intent was constitutionally defective). Commentators support the view that the term "assault" includes the element of intent. 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2, at 453 (1984).

Here, then, the term "assault" conveys the necessary element of "knowingly", and thus the information, when read liberally, contains all the essential elements of second degree assault. The information is sufficient on that basis.

■ Turning to the second step, we note that Hopper does not even allege prejudice. Our independent review of the record also discloses no prejudice. Moreover, the conviction the court is asked to review here is the result of a second trial. Certainly, the fact that an entire trial had already occurred when Hopper was preparing for this trial provides the best possible notice of precisely what was being argued. *United States v. Wabaunsee*, 528 F.2d 1, 4 (7th Cir. 1975). In addition, the proposed amendment which was offered initially contained the element "knowingly". Since the validity of this amendment was argued, Hopper was surely informed of its contents. Finally, it is hard to conceive of a possible defense that Hopper may have wished to form based on the missing element. At best, Hopper was not notified that he could argue that he struck the officer with his own flashlight by accident. The implausibility of this argument illustrates that Hopper was not prejudiced by the omission.

Hopper argues that the information here is insufficient for a second reason, in that it cites the wrong statute. The information cites RCW 9A.36.021, which did not go into effect until July 1, 1988, rather than former RCW 9A.36-.020, effective on the date of this crime, June 30, 1988. "Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the

defendant to the defendant's prejudice." CrR 2.1(b). We have consistently upheld convictions based on charging documents which contained technical defects such as this one. *Leach*, at 696; *State v. Jeske*, 87 Wn.2d 760, 765-66, 558 P.2d 162 (1976). This rule is also applied by federal courts. *See, e.g., United States v. Freeman*, 813 F.2d 303, 305 (10th Cir. 1987). Since no prejudice is alleged here, the information was not defective because of the error in the citation.

Because the information was sufficient in all respects, and since Hopper suffered no prejudice as a result of the language of the charging document, we reverse the Court of Appeals, and reinstate his conviction.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, and GUY, JJ., concur.

JOHNSON, J. (dissenting) — The information charging Steven Hopper with second degree assault failed to expressly state he "knowingly" assaulted another person. Despite the omission of this essential element, the majority finds the information sufficient by applying principles stated in *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991), which held a charging document that fails to include a nonstatutory element will be liberally construed when its sufficiency is challenged for the first time on appeal.

I disagree with the majority that resolution of this case is controlled by *Kjorsvik*. While *Kjorsvik* involved an information lacking a nonstatutory element, the information in this case lacked a *statutory* element. As this court recently and unanimously held in *State v. Holt*, 104 Wn.2d 315, 321-22, 704 P.2d 1189 (1985), a missing *statutory* element amounts to a constitutional violation requiring dismissal of the charges. *Holt* was neither modified nor overruled in *Kjorsvik* and is still controlling law in this case. By applying *Kjorsvik* rather than *Holt*, the majority rewards inexcusably lax practices in failing to include statutory elements and

thereby ensures continued, unnecessary litigation and delay in our criminal processes.

Even if I accepted the majority's conclusion that *Kjorsvik* applies to this case, however, I would still disagree with the majority's analysis. Under the most liberal interpretation, the use of the term "assault" in a charging document does not inform a defendant of the "knowingly" element. For these reasons, I dissent.

I

*Holt* expressly holds that the constitutionality of a charging document depends on whether it includes all the *statutory* elements. *Holt* establishes simple rules for evaluating an information that omits a statutory element. "The omission of *any* statutory element of a crime in the charging document is a *constitutional* defect which may result in dismissal of the criminal charges." *Holt*, at 320; *see also State v. Leach*, 113 Wn.2d 679, 686-90, 782 P.2d 552 (1989). The court went on in *Holt* to state that this type of defect not only allows for dismissal, it requires dismissal: "[B]ecause the information here failed to state any offense whatsoever, by its omission of two statutory elements of child pornography, that information is constitutionally defective and requires dismissal." *Holt*, at 321.

An entirely different set of rules applies when an information contains all the statutory elements but is otherwise deficient:

> Conversely, if the information states each statutory element of a crime, but is vague as to some other matter significant to the defense, a bill of particulars is capable of correcting that defect. In that event, a defendant is not entitled to challenge the information on appeal if he failed to request the bill of particulars at an earlier time.

*Holt*, at 320. These principles are consistent with *Kjorsvik*'s analysis.

*Holt* repeatedly emphasized that it was the statutory nature of these missing elements that rendered the informa-

tion constitutionally defective. This is best seen in *Holt*'s treatment of the earlier case of *State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985). In *Johnson*, the defendant was charged with burglary. Under the burglary statute, the State had to prove that the defendant intended to commit an underlying crime, but the statute did not require that the underlying crime be identified. The court held in *Johnson* that the defendant should have sought a bill of particulars and that his failure to do so constituted a waiver of the issue on appeal. *Johnson*, at 622-23; *Holt*, at 320.

In *Holt*, the court distinguished *Johnson* because the information in *Johnson* "did state every *statutory element* of burglary". *Holt*, at 320. Because the information in *Johnson* contained everything that the statute required, the information "was not fatally defective by virtue of its failure to state a crime." *Holt*, at 320. Even though the identification of the underlying crime is certainly important to the defense, it is not *statutorily* required, and therefore the charging document is not fatally defective.

*Kjorsvik* is similar to *Johnson*. The information in each case included all the statutory elements but was defective in other important regards. The current case is like *Holt*. The information in each case omitted a necessary statutory element. Since *Kjorsvik* does not involve omission of a statutory element, it should not be extended to govern this case. As this court recognized in *Holt*, statutory elements at a minimum must be included for an information to constitutionally state a crime.

There are strong policy reasons of judicial economy why we should not extend *Kjorsvik* to apply to this case. The requirement that a charging document include the statutory elements in each case is simply applied. The language is present in the statute for all to see. To excuse the prosecution from this clearly apparent obligation means courts will be obligated in each case to determine whether the words

used would reasonably apprise an accused of the elements of the crime charged. This is an unjustifiable burden that can be easily eliminated by reaffirming *Holt*'s rule, under which the court need merely compare the information's language to that contained in the relevant statute.

Under *Holt*, the analysis in this case is straightforward. Hopper's information did not expressly include the "knowingly" element, thus the information was constitutionally defective and the charges should have been dismissed.[3]

## II

Additionally, I would not join in the majority's analysis even if I agreed *Kjorsvik* should be applied. *Kjorsvik* calls for a liberal interpretation of the charging document, but even a liberal interpretation does not save the defective information involved here.

The majority liberally construes the term "assault" in Hopper's information as conveying the necessary element of "knowingly". See majority, at 159. I cannot agree. If the Legislature had intended the term "assault" to mean a knowing act in every circumstance, it would not have enacted a statute making knowledge an additional element of the crime. The majority's interpretation in effect reads the term "knowingly" right out of the statute, despite this court's duty to give effect to each statutory term. *See Clark v. Pacificorp*, 118 Wn.2d 167, 183, 822 P.2d 162 (1991); *PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 118, 750 P.2d 1240 (1988).

Moreover, the Legislature has created a form of assault that does *not* require a knowing act. Under Washington's statutes, an assault may be committed through acts of criminal negligence. *See* former RCW 9A.36.030(1)(b) (in effect at the time when Hopper's acts were alleged to have

---

[3]Many other cases have also held that a violation of the defendant's constitutional right to be informed of the nature of the charges requires automatic reversal of the defendant's conviction. *See State v. Irizarry*, 111 Wn.2d 591, 595-96, 763 P.2d 432 (1988); *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987); *see also Leach*, at 690-91. *But see State v. Bailey*, 114 Wn.2d 340, 348, 787 P.2d 1378 (1990).

occurred);[4] current RCW 9A.36.031(1)(d).[5] Criminal negligence does not involve knowing conduct. *See* RCW 9A.08-.010(1)(d). Thus, under Washington law the term "assault" does not necessarily refer to a knowing act.

It is this special meaning of "assault" under Washington law that undercuts the majority's reasoning on this point. The majority relies on the common law, a dictionary and writings of legal commentators to the effect that "assault" usually connotes a knowing or intentional act. Majority, at 158-59. Yet Hopper was not charged under the common law or the law of another jurisdiction; he was charged under Washington's statutes. These statutes, not the common law or the law in other states, should form the primary focus of our analysis of the meaning conveyed in the term "assault".

The majority also relies on this court's observation that "[t]he word 'assault' is not commonly understood as referring to an unknowing or accidental act." *State v. Osborne*, 102 Wn.2d 87, 94, 684 P.2d 683 (1984). In *Osborne*, however, the court did not take into account the existence of the statute under which criminally negligent actions can constitute an assault. Former RCW 9A.36.030(1)(b); current RCW 9A.36.031(1)(d). Thus, the court apparently was unaware that under Washington's criminal law an assault *can* entail an unknowing act.

Accordingly, even under *Kjorsvik*'s rules of liberal interpretation, the charging document did not inform Hopper of the "knowingly" element of second degree assault. Dismissal of the charges is warranted under these circumstances. Majority, at 155. Hopper need not show any

---

[4]Under the former statute, a person committed assault in the third degree if the person "[w]ith criminal negligence, . . . cause[s] physical injury to another person by means of a weapon or other instrument or thing likely to produce bodily harm". Former RCW 9A.36.030(1)(b) (repealed by Laws of 1986, ch. 257, § 9).

[5]Under the current statute, a person commits third degree assault if he or she "[w]ith criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm". RCW 9A.36.031(1)(d), *amended by* Laws of 1990, ch. 236, § 1.

prejudice, because *Kjorsvik* calls for an analysis of prejudice only if the liberal interpretation *upholds* the validity of the information. *See Kjorsvik*, at 105-06; majority, at 155-56.

### III

I also comment on two other aspects of the majority's analysis.

The majority concludes that our state constitution "clearly" establishes no broader rights than those established under the federal constitution. See majority, at 156-57. My objections to this conclusion are threefold.

First, any analysis of whether the state constitution provides broader protection than the federal constitution must take into account the six nonexclusive factors of the *Gunwall* test. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986); *State v. Boland*, 115 Wn.2d 571, 575, 800 P.2d 1112 (1990). The majority mentions, but does not apply, this test. Majority, at 156.

Second, the majority seeks to justify its conclusion as to the state constitution by stating that "Washington courts have frequently treated the Sixth Amendment and Const. art. 1, § 22 (amend. 10) as containing the same protection." Majority, at 156. This statement is misleading. In none of these cases did the court address whether the state provision supplies broader protection than its federal counterpart.[6] The majority's suggestion that this question has already been resolved is incorrect.

Third, the majority states that the federal constitution actually provides broader protection than the state constitution because only the federal constitution confers the protections associated with the right to be indicted by a grand jury. The majority does not explain why grand jury indict-

---

[6]A review of the majority's citations on this point reveals only that both constitutional provisions support the proposition that a defendant must be informed of the nature of the charges he or she faces. *See State v. Leach*, 113 Wn.2d 679, 695, 782 P.2d 552 (1989); *State v. Bergeron*, 105 Wn.2d 1, 18 n.41, 711 P.2d 1000 (1985); *State v. Strong*, 56 Wn. App. 715, 717, 785 P.2d 464, *review denied*, 114 Wn.2d 1022 (1990). These cases in no way address the relative scope of the two provisions.

ments are relevant to the analysis of this case. Hopper was charged by information, not indictment. Whether or not the federal protection is greater when a defendant is charged by indictment has no bearing on the issue in this case.

State constitutional analysis is an important aspect of constitutional law. It should not be so cavalierly treated.

Finally, I must respond to the majority's attempt to justify *Kjorsvik*'s rules of liberal interpretation by stating that we have always engaged in this type of analysis. *See* majority, at 157. As the majority points out, Washington courts have indeed used a "common understanding" rule, under which a court analyzes whether "a person of common understanding can, from the allegations of the information, know the exact nature of the charge against him.' " Majority, at 157 (quoting *State v. Unosawa*, 29 Wn.2d 578, 589, 188 P.2d 104 (1948)). Yet in Washington's prior cases, this common understanding came into play only *after* the court determined that the information's express language included the essential elements. *See, e.g., Unosawa*, at 589. Thus, the "common understanding" rule was inapplicable to the threshold issue of whether the information contained the essential elements. It is this principle that is changed by *Kjorsvik* and the majority today. Far from finding support in our previous cases, the majority radically departs from the traditional analysis.

I would reverse and dismiss Hopper's conviction.

UTTER, J., concurs with JOHNSON, J.