IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

2017 APR 17 AM 9:45
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74261-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ISRAEL ESPINOZA-REYES, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 17, 2017 |

SCHINDLER, J. — Israel Espinoza-Reyes seeks reversal of the jury conviction of robbery in the first degree. For the first time on appeal, Espinoza-Reyes claims the information omitted an essential element of the crime. In the alternative, Espinoza-Reyes claims the court abused its discretion in denying his motion for a mistrial. Because the information is constitutionally sufficient and the court did not abuse its discretion in denying the motion for a mistrial, we affirm.

Israel Espinoza-Reyes and Tara M. Hasme worked at the Sandstone Inn in SeaTac.

At approximately 8:30 p.m. on August 21, 2014, Espinoza-Reyes and Hasme "storm[ed] in through the front door" of the Sandstone Inn wearing masks and dressed in "dark clothing." Hasme pointed a toy handgun at desk clerk Damaris Amaya and shouted, " 'Get on the fucking floor now.' " Espinoza-Reyes punched Amaya twice in the back of the head and took her cell phone from her hand.

Espinoza-Reyes and Hasme forced Amaya to the ground. Hasme stood over Amaya and pointed the toy handgun at her while Espinoza-Reyes took money out of the cash register. Before leaving, Espinoza-Reyes unsuccessfully tried to get money out of the hotel safe.

Amaya called 911. Amaya told the 911 operator she was robbed by two individuals with a "fake gun" and she "kn[e]w who they were."

King County Sheriff Deputy Travis Brunner, Deputy James Nelson, and Deputy Andy Conner responded at approximately 8:45 p.m. Amaya was "shaking and crying." Amaya told the deputies that she recognized the robbers as Espinoza-Reyes and Hasme based on their voices, their "build," and their shoes. Amaya described Hasme's hair as "dyed bright red." A woman standing outside the hotel told Deputy Conner that she saw "a guy running southbound."

Police dispatch identified the suspects as a "couple" who were "disgruntled employees" and that the woman had "dyed red" hair. At approximately 9:10 p.m., Deputy Conner saw a Hispanic man and a woman with "bright red hair" four blocks south of the Sandstone Inn at a bus stop. The man and woman matched the description of the robbery suspects.

Deputy Conner noticed that the man, later identified as Espinoza-Reyes, was "profusely sweaty" even though it "wasn't a particularly warm night." The woman, later identified as Hasme, allowed Deputy Conner to look in her purse. Deputy Conner saw a "wad of cash" and a "toy gun." The police arrested Espinoza-Reyes and Hasme. The police also later found a "heroin kit" and "tar heroin" in Hasme's purse.

Amaya identified Espinoza-Reyes and Hasme as the two people who attacked her and robbed the Sandstone Inn. But Amaya said Espinoza-Reyes "didn't have the

2

same clothing on." Amaya was later diagnosed with a "concussion and a cervical sprain."

On August 25, 2014, the State charged Espinoza-Reyes and Hasme with robbery in the first degree. Hasme pleaded guilty. On September 17, 2015, the State filed an amended information charging Espinoza-Reyes with robbery in the first degree in violation of RCW 9A.56.190 and .200(1)(a)(iii) based on infliction of bodily injury. Espinoza-Reyes pleaded not guilty.

Pretrial, Espinoza-Reyes filed a motion to exclude testimony that two days before the robbery, he and Hasme stole money from the hotel cash register and the day before the robbery, the hotel withheld their paychecks. The State argued the evidence was admissible to show a motive for robbing the hotel.

The court conducted an analysis weighing the probative value of the evidence and the prejudicial effect. The court excluded testimony that Espinoza-Reyes and Hasme stole money from the hotel before the robbery. But the court ruled that "[i]f the [S]tate seeks to introduce any evidence . . . as to the fact that payment was withheld from the couple for purposes of motive, the [S]tate may do so."[1]

> The allegation Tuesday is that he stole something. The employer does not pay them on Wednesday. The robbery [is] on Thursday.
> . . . .
> So the court finds that the — talking about the incident of Tuesday and the speculation of Ms. Amaya is more prejudicial than probative to the issue of motive in this particular instance.
> If the [S]tate seeks to introduce any evidence, and assuming it is admissible under other prongs as to the fact that payment was withheld from the couple for purposes of motive, the [S]tate may do so.

A number of witnesses testified during the three-day jury trial. Without objection, Deputy Conner testified police dispatch described the suspects as "disgruntled

---

[1] Espinoza-Reyes does not assign error to this ruling.

3

employees." Deputy Conner testified Espinoza-Reyes is five feet seven inches tall and weighs 180 pounds while Hasme is five feet two inches tall and weighs 105 pounds. Deputy Conner said that when he asked Hasme if he could look in her purse, she tilted the purse "as if she was trying to hide something" but a "wad of cash fell over and the gun flopped right out."

Deputy Peter Cougan drove Espinoza-Reyes to the King County jail. Deputy Cougan testified that Espinoza-Reyes told him he found the cash and the toy gun on the street. When Deputy Cougan asked Espinoza-Reyes if he was involved in the robbery, Espinoza-Reyes said, " 'I am not an idiot. Why would I rob the place I work at?' "

Deputy Brunner testified the police found $181 in cash in Hasme's purse. Deputy Brunner performed an "accounting" and determined that $135 was missing from the hotel cash register.

The court admitted into evidence a copy of the Sandstone Inn surveillance video with audio. The State played the video for the jury. The video shows Amaya standing at the hotel desk. A "smaller framed female and a larger framed male" enter the hotel wearing masks, hats, and dark clothing. The woman points "what appeared to be a revolver" at Amaya and screams at her. Both robbers go behind the desk. The man punches Amaya in the back of the head two times while the woman keeps the gun pointed at her. Both robbers then force Amaya to the floor. The video shows the man taking money out of the cash register and then entering the office behind the front desk. The camera in the office shows the man unsuccessfully attempting to open the hotel safe. The man then exits the office and the man and woman leave the hotel.

Amaya testified she worked with Espinoza-Reyes and Hasme. Amaya said she talked to Espinoza-Reyes "almost every day that he was there" and talked to Hasme

4

when their shifts coincided. Amaya said Hasme was "very thin" and Espinoza-Reyes had a "way bigger build." Amaya testified that Espinoza-Reyes and Hasme lived in a house approximately one minute away from the hotel "[i]f you ran."

The prosecutor asked Amaya what happened on August 21, 2014. Amaya testified that she was working the 2:00 p.m. to 10:00 p.m. shift at the front desk of the hotel. Amaya said Hasme came in around 4:00 p.m. to pick up her paycheck and mentioned Espinoza-Reyes and Hasme did "not get[ ] a paycheck."

> Q.     . . . . So on that Thursday, August 21, 2014, what happened?
> A.     I had come in to work like normal, my shift from two until 10, and [Hasme] had come in to pick up her paycheck I think around 4 o'clock.
>        They — [Hasme] was not — whatever management had resolved with them about not getting a paycheck — .

The defense objected. The court sustained the defense objection.[2]

Later, Amaya testified that she knew the robbers were Espinoza-Reyes and Hasme "[b]ecause they had a motive. . . . I know that they were . . . mad with the owners."

> Q.     And about when did you realize that that was Tara Hasme . . . and Israel Espinoza-Reyes?
> A.     When they entered the door.
> Q.     When they entered the door?
> A.     Um-hum.
> Q.     You knew right then?
> A.     Um-hum.
> Q.     Okay, how did you know?
> A.     Because they had a motive.
> Q.     Let's — okay.
> A.     I know that —
> Q.     Let's not —
> A.     — we are not supposed to talk about what happened before, but — let's just say that I know that they were . . . mad with the owners.

---

[2] In light of the court's pretrial ruling, it is unclear why the court sustained the objection.

Defense counsel asked to "be heard outside the presence of the jury." The court denied the defense request to take a recess.

Amaya testified that she recognized the female robber as Hasme because she recognized her voice and "body build." Amaya testified that she recognized the male robber as Espinoza-Reyes based on his voice, height, and build.

Q.  Okay, and are you sure today that he was — the male in that video?
A.  Yes.
Q.  Why?
A.  Because his body build was the same. I heard his voice. I heard his voice when he said that he wanted the phone.
    For other reasons that I mention —
Q.  Okay —
A.  — and —
Q.  Based on his appearance?
A.  His appearance.
Q.  His height?
A.  His height.
Q.  His build?
A.  His build.
Q.  His voice, you are saying — how sure are you that it was him?
A.  It's just —
Q.  So do you know it was him or do you know?
A.  I do know it was him.
Q.  Okay.
A.  It's just — you know, the situation, everything, how it was going on. I was able to recognize that it was him under the circumstances.

During the recess, Espinoza-Reyes moved for a mistrial. Espinoza-Reyes argued Amaya's testimony violated the court ruling excluding evidence that Espinoza-Reyes and Hasme stole money from the hotel two days before the robbery. The court denied the motion but agreed to give a curative instruction.

As part of the jury instructions, the court instructed the jury not to consider any testimony about "motive" or "Tara Hasme's interactions with hotel management." Jury instruction 6 states, "Statements made by any witness as to motive and as to Tara

6

Hasme's interactions with hotel management are stricken and not to be considered by you as evidence in this matter."

The jury convicted Espinoza-Reyes as charged of robbery in the first degree.

Sufficiency of the Amended Information

For the first time on appeal, Espinoza-Reyes contends he is entitled to reversal because the amended information omitted an essential element of the crime of robbery in the first degree.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, an individual charged with a crime has the right to know the charges against him. State v. Porter, 186 Wn.2d 85, 89, 375 P.3d 664 (2016); State v. Johnson, 180 Wn.2d 295, 300, 325 P.3d 135 (2014). The information is constitutionally sufficient "only if all essential elements of a crime, statutory and nonstatutory, are included in the document." State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995); Porter, 186 Wn.2d at 89. We review the sufficiency of a charging document de novo. Johnson, 180 Wn.2d at 300; State v. Campbell, 125 Wn.2d 797, 800, 888 P.2d 1185 (1995).

Where, as here, the defendant challenges the charging document for the first time on appeal, we construe the charging document liberally to determine whether the necessary elements appear in any form, or by fair construction, are found on the face of the document. State v. Kjorsvik, 117 Wn.2d 93, 105, 812 P.2d 86 (1991); State v. Zillyette, 178 Wn.2d 153, 161, 307 P.3d 712 (2013); Porter, 186 Wn.2d at 89. In liberally construing the charging document, we apply the two-pronged test set forth in

7

Kjorsvik:

> (1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language.

Kjorsvik, 117 Wn.2d at 105-06; Zillyette, 178 Wn.2d at 162.

Under the first prong of the Kjorsvik test, we look at only the face of the charging document. Kjorsvik, 117 Wn.2d at 106. "Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." Kjorsvik, 117 Wn.2d at 109; State v. Goodman, 150 Wn.2d 774, 788, 83 P.3d 410 (2004). Even if there is an apparently missing element, the element "may be implied if the language supports such a result." State v. Hopper, 118 Wn.2d 151, 156, 822 P.2d 775 (1992); Kjorsvik, 117 Wn.2d at 104; Zillyette, 178 Wn.2d at 161.

Here, the amended information alleged, in pertinent part:

### Count 1 Robbery In The First Degree

> That the defendant Israel Espinoza-Reyes in King County, Washington, on or about August 21, 2014, did unlawfully and with intent to commit theft take personal property of another, to-wit: money, from the person and in the presence of Damaris Amaya, against her will, by the use or threatened use of immediate force, violence and fear of injury to such person or her property and to the person or property of another, and in the commission of and in immediate flight therefrom, the defendant inflicted bodily injury on Damaris Amaya;
>
> Contrary to RCW 9A.56.200(1)(a)(iii) and 9A.56.190, and against the peace and dignity of the State of Washington.

Espinoza-Reyes relies on State v. Richie, 191 Wn. App. 916, 924, 365 P.3d 770 (2015), to argue the amended information does not include the essential element that the victim has "an ownership, representative, or possessory interest in the property taken." Assuming, without deciding, that "ownership, representative, or possessory

interest in the property taken" is an essential element of robbery in the first degree, under a fair construction of the amended information, the information alleged Espinoza-Reyes took personal property from a person with dominion and control over the property taken. Under a liberal construction of an information, if the charging document "contains allegations that express the crime which was meant to be charged, it is sufficient even though it does not contain the statutory language." Hopper, 118 Wn.2d at 156. The language that Espinoza-Reyes took money "from the person . . . of Damaris Amaya" fairly implies that Amaya had a possessory interest in the property.

State v. Graham, 64 Wn. App. 305, 824 P.2d 502 (1992), is analogous. In Graham, the information alleged the defendant took property " 'from the person and in the presence of' " the victim. Graham, 64 Wn. App. at 307. We held the "allegation that the property was taken 'from the person' of the victim indicates that the victim had actual possession of, and thus dominion and control over, the property taken." Graham, 64 Wn. App. at 308; see also State v. Tvedt, 153 Wn.2d 705, 718-19, 107 P.3d 728 (2005) (allegation that defendant "took the business's cash from or from the presence of" two named individuals "sufficient to state the elements of the offenses charged").

The other case Espinoza-Reyes cites, State v. Naillieux, 158 Wn. App. 630, 241 P.3d 1280 (2010), is distinguishable. In Naillieux, we could not infer the " 'reckless' " and " 'lights and sirens' " elements of the crime of attempting to elude a police officer from use of the phrase, " 'willful and wanton' " and " 'appropriately marked.' " Naillieux, 158 Wn. App. at 644-45.

Although we must also determine prejudice under Kjorsvik, Espinoza-Reyes does not address prejudice. Nonetheless, an independent review of the record reveals no prejudice. Hopper, 118 Wn.2d at 155-56. There is no dispute Amaya, as the front

9

desk clerk, was in possession of the money stolen from the front desk of the hotel. See Richie, 191 Wn. App. at 924-25. Espinoza-Reyes does not dispute the robbery occurred. He argues he did not commit the robbery.

Under the liberal standard applied to a charging document for the first time on appeal, the amended information was constitutionally sufficient.

<u>Motion for Mistrial</u>

Espinoza-Reyes asserts the court erred in denying his motion for a mistrial. We review the denial of a mistrial for abuse of discretion. State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). "[W]e find abuse only 'when no reasonable judge would have reached the same conclusion.' " Emery, 174 Wn.2d at 765[3] (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

A trial court has broad discretion to rule on irregularities during the course of a trial. State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). The trial court is in the best position to determine if a trial irregularity caused prejudice. State v. Perez-Valdez, 172 Wn.2d 808, 819, 265 P.3d 853 (2011). Ultimately, we will reverse the trial court only if there is a substantial likelihood the trial irregularity prompting the mistrial motion affected the jury verdict. State v. Rodriguez, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002).

In determining whether a trial court abused its discretion in denying a motion for a mistrial, we consider (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court instructed the jury to disregard the evidence. State v. Escalona, 49 Wn. App. 251, 254, 742 P.2d 190 (1987); Emery, 174 Wn.2d at 765; Perez-Valdez, 172 Wn.2d at 818.

---

[3] Internal quotation marks omitted.

Below, Espinoza-Reyes argued Amaya's testimony violated the pretrial ruling excluding evidence that he and Hasme stole money from the hotel two days before the robbery. The prosecutor argued Amaya's testimony "did not reveal that incident."

> I informed Ms. Amaya two times specifically not to mention anything about the incident that took place two days prior.
>
> . . . .
> Her testimony today did not reveal that incident. She said because of the way they looked, and because of motive, and then I stopped her, and we don't know what that motive is.

The court ruled the testimony did not violate the pretrial ruling and denied the motion for a mistrial but stated that if requested, the court would give a curative instruction to the jury.

> This court saw where this was going and she did not give any specifics, so none of the specific abouts [sic] about the motion, so there was a mention of a motive and that she observed [Hasme] speaking with the management.
> There is no indication that she observed that the defendant in question had an issue with the management or that he was the one who engaged in this.
>
> . . . .
> But if you wish me to provide a limiting instruction that a motive was mentioned and no evidence has been established to show motive, I'm happy to provide something to that effect.

The record supports the court's ruling that the testimony did not violate the motion in limine. Amaya did not testify that Espinoza-Reyes and Hasme were suspected of stealing from the hotel two days before the robbery. Amaya testified that Hasme had an interaction with hotel management "about not getting a paycheck" and that Espinoza-Reyes and Hasme "had a motive" to rob the hotel.

In any event, the court instructed the jury to disregard testimony about "motive" and Hasme's "interactions with hotel management." We presume the jury follows the court's instructions and considers only the evidence that is properly before it. Perez-

11

Valdez, 172 Wn.2d at 818-19; Emery, 174 Wn.2d at 766; State v. Russell, 125 Wn.2d 24, 84-85, 882 P.2d 747 (1994).

Espinoza-Reyes asks us to deny appellate costs. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Espinoza-Reyes was found indigent by the trial court. Under RAP 14.2, if the State has evidence indicating that Espinoza-Reyes's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner. State v. St. Clare, No. 74802-5-I, 2017 WL 1133409, at *5-*6 (Wash. Ct. App. Mar. 27, 2017).

We affirm the jury verdict.

WE CONCUR: