[No. C. D. 2946. *En Banc.* March 22, 1956.]

*In the Matter of the Disciplinary Proceedings Against* JAMES O. BALLOU, *an Attorney at Law.*[1]

*A. Vernon Stoneman*, for board of governors.

*Wright & Wright*, for respondent.

*Leon T. Noble, W. R. Studley*, and *Joe L. Johnson, amici curiae.*

ROSELLINI, J.—This is a disciplinary proceeding against James O. Ballou, an attorney at law. Mr. Ballou was born at Fort Wayne, Indiana, in 1909, was graduated from Indiana University law school in 1934 with an LL.B. degree. He was admitted to practice in Indiana, July 27, 1934, and in

[1]Reported in 295 P. (2d) 316.

the state of Washington, on March 19, 1946. Since that time he has resided and practiced in Cowlitz county, Washington.

The charges against Mr. Ballou grew out of his conduct in the trial of the case of *In re Ross* in the juvenile department of the superior court. The subject matter of that case was before this court in *In re Ross*, 45 Wn. (2d) 654, 277 P. (2d) 335.

The case against Mr. Ross was closed at the end of the hearing on June 29th, and was continued for the presentation of the defense to July 8, 1954. The matter was under way for only a few minutes, July 8th, when the prosecuting attorney asked leave to reopen the case against Mr. Ross and was permitted to do so over objection by Mr. Ballou. The prosecuting attorney called Mr. Ross as an adverse witness, and after fifteen or twenty minutes of questions and objections by Mr. Ballou, the incident, complaint of which was later made to the board of governors of the state bar association, occurred as follows:

"Mr. Ballou: Mr. Ross, you not having been sworn under oath, I advise you that you may lie as freely as you wish. The Witness: That's what the rest of them have been doing. Mr. Reed: I object to the remarks of counsel advising the witness to lie. The Witness: I haven't got a fair trial out of this any time. Mr. Ballou: Never mind; let me be the one getting into trouble, Mr. Ross.

"Q. When was it you saw your wife the last time? Mr. Ballou: He has been asked the question three times. A. I told you I don't know, and that is the truth. The Court: What month was it? Mr. Reed: Approximately when? The Witness: It was last month sometime. Q. Didn't you send her some money to return to Washington? Mr. Ballou: I object, it isn't material. The Witness: What's that got to do with my case? Mr. Ballou: Never mind. Lie to him."

Shortly after the above, the following occurred:

"Q. Are you lying now, Mr. Ross? A. No. Q. Your counsel just told you to lie. A. I'm not lying. Mr. Ballou: Never mind. I told you to go ahead and lie if you want to. The Court: Do you think that is professional conduct, Mr. Ballou? Mr. Ballou: Yes, with the purpose of— The Court: That is your conception of professional conduct as a law-

yer? MR. BALLOU: If your Honor will let me explain. THE COURT: I am asking you, do you consider that professional conduct as a lawyer in advising your client to lie in this court? MR. BALLOU: I want to point out,— THE COURT: I am asking you a question. MR. BALLOU: I ask permission to defend myself. THE COURT: You have no defense on an issue of that type. You have no defense on an issue of that type, to advise your client in open court to lie to the Court. MR. BALLOU: I wanted to point out to your Honor that in the defense of this matter we have not had the slightest bit of protection against the stories of the people on the other side because they have not been sworn. THE COURT: That is no justification for advising your client to lie in open court. I think your conduct is contemptuous and I think you should be subject to punishment therefor. Now, that is my thought."

The trial committee of the state bar association found that, although Mr. Ballou's conduct could not be excused, condoned, or sanctioned, it had occurred while he had been under great mental and emotional strain, and that there was some basis or reason for his being upset because of the things that had occurred in the trial, which were improper and were damaging to his client. It found that, more than a month after the above mentioned trial, there appeared in the Kelsonian Tribune, a newspaper published at Kelso, Washington, an article entitled, "Disciplinary Action Asked on J. O. Ballou"; and that the statements made therein had caused Mr. Ballou considerable embarrassment, had adversely affected his standing and position in the community, and had a depreciating effect upon his income from the practice of his profession. The trial committee concluded that Mr. Ballou had suffered great damage and injury, which were sufficient punishment for his misconduct, and recommended that any further proceedings in the disciplinary matter be dismissed.

The board of governors of the Washington bar association approved the findings of the trial committee, but disagreed with the committee's final conclusion that further disciplinary proceedings be dismissed, and recommended that Mr. Ballou should be suspended from the practice of law for a period of thirty days.

The Cowlitz county bar association filed a brief as *amici curiae*, and its president, at the hearing before this court, argued that due consideration should be given to the mitigating circumstances as found by the trial committee. He stated that respondent Ballou's conduct in recent months led the Cowlitz bar association to believe that his present attitude is such that a like incident would not again occur, and recommended that further proceedings should be dismissed.

Rule 10 (3), 34A Wn. (2d) 183, lists among the grounds for disciplinary action: "Violation of his oath as an attorney, or of his duties as an attorney and counselor."

Rule 18, Revised Rules for Admission to Practice, 34A Wn. (2d) (Sup. No. 5) 33, includes the following:

"I will maintain the respect due to courts of justice and judicial officers; . . .

"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law; . . .

"I will abstain from all offensive personality."

Rule 29, Canons of Professional Ethics, Upholding the Honor of the Profession, 34A Wn. (2d) 137, states: "He should strive at all times to uphold the honor and to maintain the dignity of the profession."

After a careful review of the record, we are compelled to hold that the respondent failed to maintain the respect due the court; acted in a contemptuous manner; failed to abstain from offensive personality; and failed to uphold the honor and to maintain the dignity of the profession.

The trial committee, the board of governors of the state bar association, and the Cowlitz county bar association all agree that the respondent's conduct is subject to disciplinary action, but do not agree upon what the punishment should be.

The recommendation that further disciplinary proceedings be dismissed is based upon the conclusion that the respondent's conduct was the result of the emotional stress under which he was laboring, and the belief that the at-

tendant notoriety and loss of income from his profession were sufficient punishment.

We think the emotional element has been overemphasized as a justification. Respondent's advice to the witness, Ross, to lie occurred not once, but three distinct times in the course of the exchange above quoted. It was not until after the third instance that the court took the matter up and questioned the respondent on his professional conduct. Most of the incidents which could be considered provocation took place at the first hearing on June 29th, while his advice to Ross to lie came at the second hearing on July 8th. At the commencement of the second hearing, which lasted only an hour, the respondent testified that there was nothing perturbing him particularly. He describes the problem he had in mind as he approached the second day's hearing, and then testified:

"With that background, we came to court to start at 9:30. I had nothing perturbing me particularly. I had concluded by that time that the Supreme Court was inevitable; I was not going to burden the cost of the record by enlarging the cost of the transcript."

These facts, coupled with the advice to his client to lie, three times within the first few minutes of the second hearing, make his conduct appear willful.

Although the respondent has suffered a loss of income and unfortunate notoriety for his act, this is normally the result of any disciplinary proceeding.

The discipline and punishment to be meted out to an attorney who violates his oath of office or canons of ethics is exclusively reserved to the supreme court; the degree of punishment is left to the discretion of this court. Like all punishment, the court must take into consideration (1) that the punishment must be for the purpose of safeguarding the public and public institutions, (2) the effect it will have as a deterrent to others who may find themselves disposed to violate the standards of conduct of the profession, and (3) the deterrent effect upon the offender not to again commit the offense with which he was charged.

The general public obtains one of its impressions of the legal profession from the conduct of lawyers in the court room. The average citizen has profound respect for our courts, and this respect cannot be continued and maintained without the full measure of respect and dignity on the part of lawyers in their courtroom behavior. Respect for our judiciary and our legal system is imperative if we are to maintain our constitutional form of government.

As all lawyers know, all trials are attended by some stress and emotional strain, and if lawyers were permitted to indulge in contemptuous conduct when they considered the trial judge to be in error, orderly procedure in the administration of justice would be at an end.

We would be constrained to agree with the trial committee's recommendation that further disciplinary action be dismissed if we were convinced, as the Cowlitz county bar association is, that the respondent's present attitude is such that a similar incident is not likely to occur in the future.

In addition to the excellent brief written by the respondent's attorney of record, Mr. Ballou filed a brief, a reply brief, and an addenda to the reply brief, all written by himself. A careful examination of the contents thereof leads us to conclude that the punishment already meted out to the respondent in the form of notoriety and loss of earnings is not sufficient to deter him from again becoming involved in a like situation. An order of suspension must be entered.

It is ordered that the respondent be suspended from his profession as an attorney and counselor at law in the courts of this state for a period of thirty days from the date this decision becomes final.

ALL CONCUR.