[No. 41707. En Banc. February 17, 1972.]

THE STATE OF WASHINGTON, *on the Relation of Anthony Schwab, Petitioner,* v. WASHINGTON STATE BAR ASSOCIATION, *Respondent.*

*Anthony Schwab,* pro se.

*Jack P. Scholfield,* for respondent.

STAFFORD, J.—Anthony R. Schwab, the petitioner, was admitted to the practice of law in 1969. At that time he became a member of the Washington State Bar Association, the respondent herein, pursuant to RCW 2.48.021.

Petitioner admits that in 1970 he refused to pay the required fee for membership in the Washington State Bar Association. RCW 2.48.130. It is agreed that the state bar

association sent petitioner the statutory notices informing him his membership fee was delinquent. RCW 2.48.160. Petitioner is frank to admit that he refused to pay the fee to precipitate the instant action. He chose this vehicle to challenge a number of bar association programs, practices and activities as either violative of or beyond the association's authority.

Petitioner suggests that there are serious legal and policy considerations involved. However, except for three issues to be discussed hereafter, he has either failed to provide us with the proper legal argument or has failed to support his suggestions with legal authority, or both. We have held consistently that issues and propositions that are not argued in the brief will not be considered; nor will they be considered when they are not supported by legal authority, unless it is apparent without further research that they are well taken. *DeHeer v. Seattle Post-Intelligencer,* 60 Wn.2d 122, 372 P.2d 193 (1962); *see also Johnson Serv. Co. v. Roush,* 57 Wn.2d 80, 355 P.2d 815 (1960); *Fox v. Bankers Life & Cas. Co.,* 61 Wn.2d 636, 379 P.2d 724 (1963).

The foregoing rule is peculiarly applicable to a case wherein one attempts, by bare allegation or suggestion, to call into question fundamental relationships between the state bar association and the three branches of government. We will not decide such basic issues without the benefit of an adequate brief that at least demonstrates that the reasons are well taken, which is not the case here.

On June 5, 1970, petitioner was notified that the board of governors had suspended him "from membership in the State Bar Association because of failure to pay dues . . ." This fact was certified to the Supreme Court.

Petitioner argues that the mandatory suspension for nonpayment of dues provided in RCW 2.48.160[1] is an unconstitutional usurpation of the Supreme Court's judicial power.

---

[1] RCW 2.48.160. "Any member failing to pay any fees after the same become due, and after two months' written notice of his delinquency, *must be suspended from membership in the state bar* . . ." (Italics ours.)

We disagree with petitioner's over-broad interpretation of the statute. It must be construed in the light of our past decisions and in context with other portions of the same act.

■ First, we have held repeatedly that *only* the Supreme Court has the power to suspend one from the practice of law or to take other disciplinary action. *In re Bruen,* 102 Wash. 472, 172 P. 1152 (1918); *In re Ballou,* 48 Wn.2d 539, 295 P.2d 316 (1956); *In re Simmons,* 59 Wn.2d 689, 369 P.2d 947 (1962); *see also Clark v. Washington,* 366 F.2d 678 (9th Cir. 1966).

Second, RCW 2.48.060 provides generally that the board of governors has the power to prescribe rules, establish procedures and to carry out the investigation, prosecution and hearing of all cases involving *discipline, disbarment, suspension, or reinstatement.* It also provides that the board may make *recommendations* thereon to the Supreme Court. However, all such power is specifically made subject to the approval of the Supreme Court.

The foregoing statute and our past decisions make it evident that this court does not share the power of discipline, disbarment, suspension or reinstatement with either the legislature or the state bar association. The ultimate constitutional power clearly lies within the *sole jurisdiction* of the Supreme Court. This point is conceded in the brief of the respondent bar association.

Such constitutional concept leaves no room for the notion that a lawyer's authority to practice law is subject to some vague dual existence, one part of which may be terminated by the bar's suspension of his *membership* while the other (*i.e.,* his authority to *practice law* before the courts) is subject to control of the Supreme Court. In short, membership in the state bar association and authorization to continue in the practice of law coexist under the aegis of one authority, the Supreme Court.

■ We have long recognized that both the mechanical acts of collecting dues and of reporting delinquent payments are merely ministerial. Traditionally, the Supreme Court has delegated these duties to the bar association. In

most cases, after the requisite notice of delinquent dues, the matter of suspension involves no question of fact and no contest. Either the dues have been paid or they have not. In such cases, the bar association's act of certifying a recommendation of suspension can be safely treated as a finding of fact and recommendation that the Supreme Court formally record the suspension in its records. If, however, the suspension for nonpayment of dues is challenged, this court possesses the ultimate authority to review and determine whether a formal *order of suspension* should be entered, as was done here.

In the instant case, although the board of bar governors routinely proceeded with the suspension procedure, we did not exercise our exclusive power to issue an order of suspension. Until so ordered by the Supreme Court, petitioner's authority to practice law and his membership in the Washington State Bar Association were not suspended. Thus, petitioner was enabled to challenge the acts of the bar without jeopardizing his authority to practice law under RCW 2.48.170. Further, he was not subjected to the possibility of criminal prosecution under RCW 2.48.180, which makes it unlawful for anyone to practice law while suspended from membership in the state bar.

The state bar association informed petitioner that he would be required to pay $150 for reinstatement of his membership. The full amount was paid under protest.

Petitioner contends that the assessment of $150 for reinstatement was erroneous. He argues that the state bar association was authorized to collect only $75 (*i.e.*, the accrued membership fee of $25 plus a penalty of $50). RCW 2.48.160 provides in pertinent part:

> Any member . . . may be reinstated upon payment of accrued fees and such penalties as may be imposed by the board of governors, *not exceeding double the amount of the delinquent fee.*

(Italics ours.)

Heretofore, we have found it unnecessary to consider that portion of RCW 2.48.160 which provides, as a

condition of reinstatement, that the board of governors may collect a sum "not exceeding double the amount of the delinquent fee." We previously have declared, however, that the discipline, disbarment, suspension and *reinstatement* of lawyers lies within the exclusive jurisdiction of the Supreme Court. Recognizing this ultimate power, we have reviewed RCW 2.48.160 and find that the legislative enactment adequately covers the subject and therefore adopt the pertinent portion thereof for the time being.[2]

RCW 2.48.160 specifically authorizes the collection of accrued fees (*i.e.*, $25 in the instant case) and a penalty double the amount of the delinquent fee (*i.e.*, $50). Thus, the total fees and penalties authorized herein would be $75. The petitioner shall be reimbursed $75 by the Washington State Bar Association.

Next, petitioner asserts that the Washington State Bar Association should transfer its principal place of business to the seat of government in Olympia. It is argued that *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 273 P.2d 464 (1954) compels the move.

Petitioner has misconceived the import of *Lemon*. That case is limited to an interpretation of article 3, section 24 and article 14, sections 1 and 2 of the Washington State Constitution,[3] and their application to location of the head-

---

[2]We wish to make it crystal clear that our decision has no bearing on the issue of whether the State Bar Act may be amended or superseded by rule of the Supreme Court. This issue has not been raised. Our present examination of the subject is limited to a review of RCW 2.48.160 and the required payment of delinquent fees and penalties for reinstatement to membership in the state bar association.

[3]Const. art. 3, § 24. "RECORDS, WHERE KEPT, ETC. The governor, secretary of state, treasurer, auditor, superintendent of public instruction, commissioner of public lands and attorney general shall severally keep the public records, books and papers relating to their respective offices, at the seat of government, at which place also the governor, secretary of state, treasurer and auditor shall reside."

Const. art. 14, § 1. "STATE CAPITAL, LOCATION OF. The legislature shall have no power to change, or to locate the seat of government of this state; but the question of the permanent location of the seat of government of the state shall be submitted to the qualified electors of the Territory, at the election to be held for the adoption of this

quarters of executive offices and executive agencies, created by the legislature. We held at page 108 of *Lemon*:

> In view of the history of the seat of government controversy in this state, culminating as it did in the framing of Article III, § 24, and Article XIV, §§ 1 and 2, of the state constitution, we hold that it was the evident intention of the framers of the constitution and the people who adopted it to require that all of the state *executive offices* be maintained at the seat of government.

(Italics ours.)

It is clear that *Lemon* is concerned with the state's executive offices and is not applicable to the judicial branch of the government. Nothing in *Lemon* indicates that the state bar association should be treated as an integral part of the executive branch merely because the legislature created the integrated bar by means of the State Bar Act, RCW 2.48 *et seq.*

On the showing made here, we see no valid reason for extending the rule in *Lemon* to an association that is *sui generis,* many of whose important functions are directly related to, and in aid of, the judicial branch of the government.[4]

---

Constitution. A majority of all the votes cast at said election, upon said question, shall be necessary to determine the permanent location of the seat of government for the state; and no place shall ever be the seat of government which shall not receive a majority of the votes cast on that matter. . . ."

Const. art. 14 § 2. "CHANGE OF STATE CAPITOL. When the seat of government shall have been located as herein provided, the location thereof shall not thereafter be changed except by a vote of two-thirds of all the qualified electors of the state voting on that question, at a general election, at which the question of location of the seat of government shall have been submitted by the legislature."

[4]RCW 2.48.060 Admission and disbarment.

The said board of governors shall likewise have power, in its discretion, from time to time to adopt rules, *subject to the approval of the supreme court,* fixing the qualifications, requirements and procedure for admission to the practice of law; and, *with such approval,* to establish from time to time and enforce rules of professional conduct for all members of the state bar; and, *with such approval,* to appoint boards or committees to examine applicants for admission; and, to investigate, prosecute and hear all

The Washington State Bar Association is not subject to the constitutional limitation contained in article 3, section 24 and article 14, sections 1 and 2 of the Washington State Constitution. It is not necessary for the state bar association to move its principal offices to the seat of government.

The petitioner and respondent shall bear their own costs.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, NEILL, and WRIGHT, JJ., concur.

HALE, J. (concurring in the result)—I concur in the result of this opinion but disagree with those parts of it which imply that the Washington State Bar Association is not a creature of the legislature but exists rather at the sufferance of this court. That the highest court of the state, created by the constitution, possesses many inherent powers with respect to the discipline of attorneys is not to be denied. But it is equally true that the legislature is not without power to prescribe requirements for the admission to practice and minimum standards of conduct for attorneys.

The legislature may, I believe, create agencies to enforce these requirements and standards. There are many ways in which the legislature could in the public interest have regulated the practice of law, but it chose to do so by creating an integrated state bar association. To accomplish its purpose, it saw fit to make the state bar a governmental agency. RCW 2.48.010 reads:

> There is hereby created as an agency of the state, for the purpose and with the powers hereinafter set forth, an association to be known as the Washington State Bar Association, hereinafter designated as the state bar,

---

causes involving discipline, disbarment, suspension or reinstatement, and *make recommendations thereon to the supreme court*; and, *with such approval*, to prescribe rules establishing the procedure for the investigation and hearing of such matters, and establishing county or district agencies to assist therein to the extent provided by such rules . . .

(Italics ours.) *See also Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966); *Campbell v. Washington State Bar Ass'n*, 263 F. Supp. 991 (W.D. Wash. 1967).

which association shall have a common seal and may sue and be sued, and which may, for the purpose of carrying into effect and promoting the objects of said association, enter into contracts and acquire, hold, encumber and dispose of such real and personal property as is necessary thereto.

(Italics mine.)

Assuming the validity of the integrated bar act of which RCW 2.48.010 is the first section, it appears to me that, as a part of its constitutional powers to regulate the practice of law in this state, the legislature acted reasonably in the exercise of that power by providing that no one shall engage in the practice of law in this state unless he is an active member of the state bar association. RCW 2.48.170.

We are not concerned in this case with the illegal delegation of powers to this state agency as I see it, nor with questions of equal protection and special privileges and immunities under the Fourteenth Amendment, and their resolution here ought not be implied.

Petition for rehearing denied March 24, 1972.