[No. 61830-5.    En Banc.    March 9, 1995.]

THE WASHINGTON STATE BAR ASSOCIATION, *Petitioner*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*Davis Wright Tremaine,* by *P. Cameron DeVore, Stephen M. Rummage, Linda White Atkins,* and *Gregory J. Kopta,* for petitioner.

*Christine O. Gregoire, Attorney General, Richard A. Heath, Senior Assistant,* and *Spencer Daniels, Assistant,* for respondent State.

*Webster, Mrak & Blumberg, James H. Webster,* and *Lynn D. Weir,* for respondent Union.

ANDERSEN, J.* —

## FACTS OF THE CASE

In this case we determine the constitutionality of a statute which was intended to nullify a general rule of court adopted by this court, and which directly and unavoidably conflicts with that rule of court. We hold that the statute in question, which declares the Washington State Bar Association a "public employer" subject to the Public Employees' Collective Bargaining Act, RCW 41.56, to be unconstitutional in that it violates the separation of powers doctrine.

This action grew out of a labor dispute between the Washington State Bar Association (Bar Association) and its employees. Our decision here is, however, not one which is in any way intended to affect labor law jurisprudence.

Initially, it is important to clarify what this case is *not* about. It is not about the value of collective bargaining, or

---

*Judge James A. Andersen is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

about the importance of maintaining good labor relations between the Bar Association and its employees. It is also not about the authority of the Legislature to enact general employment statutes that are applicable to the Bar Association. Nor is it about the merits of the arguments advanced by the respective participants in this labor dispute.

This is a constitutional case. What it *does* involve is one of the cardinal and fundamental principles of the American constitutional system, the separation of powers doctrine.

The pertinent facts are simple. In early 1991 several Bar Association employees attempted to organize, seeking representation by the United Food and Commercial Workers Union (Union) for purposes of collective bargaining. The Bar Association refused to recognize the Union as the collective bargaining representative of its employees. Then in November of 1991, the Union asked this court to change our General Rule (GR) 12, which outlines the purposes and the powers of the Bar Association. The suggested rule change amendment would have required the Bar Association to collectively bargain with its employees.

On October 8, 1992, this court declined to adopt the Union's suggested rule change.

During the 1993 legislative session, the Legislature enacted Engrossed House Bill (EHB) 1152 as follows:

> **Sec. 1.** The legislature is committed to providing collective bargaining for all employees. However, the legislature is also mindful of the separations of powers and responsibilities among the branches of government. Therefore, the legislature strongly encourages the state supreme court to adopt collective bargaining for the employees of the Washington state bar association.
>
> **Sec. 2.** RCW 41.56.020 and 1992 c 36 § 1 are each amended to read as follows:
>
> This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington . . ..
> The Washington state supreme court may provide by rule that the Washington state bar association shall be considered a public employer of its employees.

Laws of 1993, ch. 76, p. 218.

This court responded to that legislation by amending GR 12, the general rule governing the authority of the Bar Asso-

ciation. On December 2, 1993, after carefully considering the matter and mindful of the Legislature's recommendation, we added a new subsection (16) to our General Rule 12(b), giving the Bar Association's Board of Governors the *discretion* to determine whether to collectively bargain with its employees.[1] In an informational note to the amendment, this court recognized the Legislature's 1993 enactment, stating:

> During the 1993 regular session EHB 1152 was passed. That legislation amends RCW 41.56.020 by providing that while recognizing the separation of powers and responsibilities in government, "the legislature strongly encourages the state supreme court to adopt collective bargaining for the employees of the Washington state bar association".
>
> The amendment [to GR 12(b)] confers upon the Washington State Bar Association's Board of Governors the authority, in its discretion, to adopt collective bargaining for employees of that association.

122 Wn.2d 1119.

GR 12, which we adopted in 1987, is divided into three parts. The first part, section (a), declares the purposes of the Bar Association. The second, section (b), sets forth the various actions which the Bar Association is authorized to take. The third, section (c), sets forth the actions which the Bar Association is prohibited from taking. The parts of the rule, including the recent amendment, that are pertinent here are the following:

> (a) **Purposes; In General.** The purposes of the Washington State Bar Association shall be to promote and aid in the effective administration of justice; to assist in the admission and discipline of members of the Bar Association; to foster and maintain high standards of competence, professionalism and ethics among its members; to promote the availability of legal services to all in need; to advise the public and its officials in matters relevant to these purposes and the professional interests of the Bar Association; to promote respect and understanding for our legal system; to promote the creation of voluntary associations of lawyers concerned with their members' professional interests; to carry on programs of legal research and education; to provide a forum for the discussion of subjects pertaining to jurisprudence and the practice of law; to foster camaraderie among members of the Bar Association and good

---

[1]122 Wn.2d 1119 (1993).

will between the Bar Association and the public; to promote the independence of the Bar Association and the judiciary of which it is a part; and to promote the interests of the legal profession.

(b) **Specific Activities Authorized.** Among the specific Bar Association activities authorized by this rule and these stated purposes are:

. . .

(16) Authorizing, in its discretion, collective bargaining for its employees.

GR 12 (part).

In early 1994 the Legislature again addressed the issue. The Legislature noted that the court had amended GR 12(b) to give the Bar Association's Board of Governors discretionary authority to adopt collective bargaining for its employees. It further recognized that this court has held that "as a separate branch of government, it has inherent constitutional powers to control the bar association and its functions as part of its administration of the courts".[2] The Legislature nonetheless ignored this court's actions, repealed the declaration set forth in EHB 1152, Laws of 1993, ch. 76, § 1, and amended RCW 41.56.020 to read as follows:

This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington . . .. The Washington state bar association shall be considered a public employer of its employees.

Laws of 1994, ch. 297, p. 1881.

The effect of this new legislation was to remove the discretion which this court had granted the Board of Governors under GR 12(b)(16) by making collective bargaining mandatory.

Following the enactment of the statute, and pursuant to RCW 41.56, the Bar Association employees petitioned the Public Employment Relations Commission (PERC) for a determination as to whether the bar's employees desired to be represented by a labor organization for the purpose of collective bargaining. After PERC notified the Bar Association that it would investigate and administer the matter, the

---

[2]Final Bill Report, 1994 (HB 2641, ch. 207).

Bar Association filed a petition in this court seeking a writ of prohibition. This court has original jurisdiction in this matter pursuant to Const. art. 4, § 4 and RAP 16.2. The petition for writ of prohibition asks the court to prohibit PERC from assuming jurisdiction over the labor dispute between the bar and its employees and further asks us to declare the 1994 amendment to the statute unconstitutional.

One issue is determinative of this case.

### ISSUE

Is legislation which directly and unavoidably conflicts with a court rule governing Bar Association powers and responsibilities constitutional?

### DECISION

ISSUE.

CONCLUSION. Legislation which directly and unavoidably conflicts with a rule of court governing Bar Association powers and responsibilities is unconstitutional as it violates the separation of powers doctrine; such legislation is therefore void.

Washington's constitution, Const. art. 4, § 1 vests the judicial power of the State in a separate branch of government — the judiciary.[3] The importance of the separation of powers doctrine was stated in *Washington State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674-75, 763 P.2d 442 (1988) (quoting 16 Am. Jur. 2d *Constitutional Law* § 296, at 808, § 309, at 829 (1979))[4] as follows:

> The importance of the case before us is that it deals directly with one of the cardinal and fundamental principles of the American constitutional system, both state and federal: the separation of powers doctrine. "It has been declared that the division of governmental powers into the executive, legislative, and judicial represents probably the most important principle

[3]*Seattle v. Ratliff*, 100 Wn.2d 212, 215, 667 P.2d 630 (1983); *Zylstra v. Piva*, 85 Wn.2d 743, 754, 539 P.2d 823 (1975) (Utter, J., concurring).

[4]*See also Southcenter Joint Venture v. National Democratic Policy Comm.*, 113 Wn.2d 413, 425, 780 P.2d 1282 (1989). *See generally Carrick v. Locke*, 125 Wn.2d 129, 134-36, 882 P.2d 173 (1994); *In re Juvenile Director*, 87 Wn.2d 232, 238-48, 552 P.2d 163 (1976) (tracing the development of the separation of powers doctrine).

of government declaring and guaranteeing the liberties of the people, and preventing the exercise of autocratic power, and that it is a matter of fundamental necessity, and is essential to the maintenance of a republican form of government." . . . In this same connection, it is also the law that "American courts are constantly wary not to trench upon the prerogatives of other departments of government or to arrogate to themselves any undue powers, lest they disturb the balance of power; and this principle has contributed greatly to the success of the American system of government and to the strength of the judiciary itself."

(Footnotes omitted.) It may be noted parenthetically that in the *Motorcycle Dealers* case, we unhesitatingly applied the separation of powers doctrine to protect the authority of the legislative branch of our state government against encroachment by the State's executive branch.

In furtherance of this principle of separation of powers, this court has refused to interfere with the executive and legislative branches of government while at the same time insisting that those branches of government not usurp the functions of the judicial branch of government.[5]

One of the basic functions of the judicial branch of government is the regulation of the practice of law.[6] The Bar Association is sui generis and many of its functions are directly related to and in aid of the judicial branch of government.[7] It is important to keep in mind in this connection that the Bar Association does not receive any appropriation from the Legislature or any other public body. It is funded entirely by mandatory membership licensing fees and various user fees, including continuing legal education (CLE) revenues, bar examination fees, practice section dues and *Washington State Bar News* advertising revenues.[8] This court's control over Bar Association functions is not limited to admissions

---

[5]*Zylstra*, 85 Wn.2d at 754 (Utter, J., concurring).

[6]*Graham v. State Bar Ass'n*, 86 Wn.2d 624, 631, 548 P.2d 310 (1976).

[7]*State ex rel. Schwab v. Washington State Bar Ass'n*, 80 Wn.2d 266, 272, 493 P.2d 1237 (1972).

[8]Agreed statement of facts, at 4. *See also Graham v. State Bar Ass'n*, 86 Wn.2d 624, 629-30, 548 P.2d 310 (1976).

and discipline of lawyers. The control extends to ancillary administrative functions as well.[9]

> The practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically belongs to the judicial department of the state government. Under the doctrine of separation of powers the courts have inherent power to regulate admission to the practice of law, to oversee the conduct of attorneys as officers of the court, and to control and supervise the practice of law generally, whether in or out of court. It is a prerogative of the judicial department to regulate the practice of law. However, *the state has a substantial interest in maintaining a competent bar, and the legislature, under the police power, may act to protect the public interest, but in so doing, it acts in aid of the judiciary and does not supersede or detract from the power of the courts.*

(Footnotes omitted. Italics ours.) 7 Am. Jur. 2d *Attorneys at Law* § 2, at 55-56 (2d ed. 1980).[10]

Indeed, the Legislature itself expressly recognized the ultimate power of the court to regulate the Bar Association when it enacted its 1993 legislation relating to collective bargaining by Bar Association employees.[11]

We have recognized that it is sometimes possible to have an overlap of responsibility in governing the administrative aspects of court-related functions.[12] However, a legislative

---

[9]*See, e.g., Graham v. State Bar Ass'n*, 86 Wn.2d at 633 (Legislature may not authorize a state audit of the Bar Association by the executive branch, for it is within the power of the court to make necessary rules and regulations governing the conduct of the bar); *Schwab*, 80 Wn.2d at 272 (Legislature's creation of an integrated bar, through enactment of the State Bar Act, RCW 2.48, did not require that the Bar Association be treated as an integral part of the executive branch of government with offices in Olympia).

[10]*See also Graham v. State Bar Ass'n*, 86 Wn.2d at 633 (the regulation of the practice of law and the power to make rules and regulations governing the bar is vested exclusively in the Supreme Court); *Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 453, 635 P.2d 730 (1981) (regulation of the practice of law is within the sole province of the judiciary); *Seattle v. Ratliff*, 100 Wn.2d at 215 (the court's power to regulate the practice of law in this state is not only well established but is inviolate as well); *State ex rel. Schwab v. Washington State Bar Ass'n*, 80 Wn.2d 266, 269, 493 P.2d 1237 (1972) (the court has sole jurisdiction over the *practice of* law).

[11]Laws of 1993, ch. 76, § 1.

[12]*See, e.g., Zylstra v. Piva, supra*, wherein we determined that legislation creating a collective bargaining scheme applicable to juvenile court employees

enactment may not impair this court's functioning or encroach upon the power of the judiciary to administer its own affairs. The ultimate power to regulate court-related functions, including the administration of the Bar Association, belongs exclusively to this court.[13]

In the present case, the Legislature has attempted to nullify a general rule adopted by this court by enacting legislation which directly and unavoidably conflicts with that rule. The rule, GR 12(b)(16), grants the Bar Association's Board of Governors discretion to determine whether to collectively bargain with its employees. The legislation, RCW 41.56.020, takes that discretion away.

Where a court rule and a statute conflict, we will attempt to read the two enactments in such a way that they can be harmonized.[14] However, where they cannot be harmonized, the court rule will prevail.[15] PERC and the union both acknowledged this rule of law during oral argument before this court.

It is not possible to harmonize GR 12(b)(16) with RCW 41.56.020, as amended in 1994. The court rule, which gives the Board of Governors discretion to determine whether to collectively bargain with employees, cannot be reconciled with legislation that nullifies that discretion and makes collective bargaining mandatory. The rule therefore prevails.[16]

Once this court has adopted a rule concerning a matter related to the exercise of its inherent power to control the bar, the Legislature may not thereafter reverse or override the court's rule.

did not violate the separation of powers doctrine, if limited, and so long as it did not interfere with the court's ultimate power to administer the courts of this state; *Carrick v. Locke, supra.*

[13]*Zylstra*, 85 Wn.2d at 749-50. *Hagan & Van Camp*, 96 Wn.2d at 453 (since the regulation of the practice of law is within the sole province of the judiciary, encroachment by the Legislature may be held by the court to violate the separation of powers doctrine).

[14]*State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

[15]*In re Levy*, 23 Wn.2d 607, 161 P.2d 651, 162 A.L.R. 805 (1945); *In re Chi-Dooh Li*, 79 Wn.2d 561, 488 P.2d 259 (1971).

[16]*In re Levy*, 23 Wn.2d 607, 161 P.2d 651, 162 A.L.R. 805 (1945); *In re Chi-Dooh Li*, 79 Wn.2d 561, 488 P.2d 259 (1971).

The Legislature's enactment examined here unconstitutionally encroached upon the powers of this court. The 1994 amendment of RCW 41.56.020 violates the separation of powers doctrine and is void. PERC therefore has no jurisdiction to act with respect to the Bar Association.

The petition for a writ of prohibition is granted.

DURHAM, C.J., UTTER, GUY, and JOHNSON, JJ., and BRACHTENBACH, J. Pro Tem., concur.

DOLLIVER, J. (dissenting) — The majority correctly states the law of this case: where a legislative action directly conflicts with a court rule in an area of inherent judicial authority, the legislative action must fall as a violation of separation of powers. The issue of this case, however, is not the accuracy of that rule. Rather, the issue presented is whether such a conflict exists on the facts of the case: does chapter 297 of the Laws of 1994 (the Amendment), amending the Public Employees' Collective Bargaining Act (PECBA) (RCW 41.56.020), directly conflict with General Rule (GR) 12(b)-(16)? I would hold no such conflict exists.

## I

Guiding the court's consideration of an alleged conflict between statutory provision and judicial rule is the principle that "[a]pparent conflicts between a court rule and a statutory provision should be harmonized, and both given effect if possible." *Nearing v. Golden State Foods Corp.,* 114 Wn.2d 817, 821, 792 P.2d 500 (1990). Applying this principle, we have consistently avoided striking down such a statute. Instead, the court has construed the statute so that no conflict existed, *In re Chi-Dooh Li,* 79 Wn.2d 561, 566, 488 P.2d 259 (1971); *In re Levy,* 23 Wn.2d 607, 617, 161 P.2d 651, 162 A.L.R. 805 (1945), or acquiesced to the conflicting action of the competing branch while retaining ultimate authority to negate future intrusions, *State ex rel. Schwab v. Washington State Bar Ass'n,* 80 Wn.2d 266, 271, 493 P.2d 1237 (1972).

The majority decides the legislative and judicial acts here cannot be harmonized because GR 12(b)(16) permits collective bargaining at the Bar Association's "discretion", while the Amendment makes it "mandatory". I would interpret both the scope of the Bar Association's "discretion" and the impact of PECBA's "mandatory" collective bargaining differently than the majority has. Because this reasonable interpretation of the conflicting actions permits harmonization, I would so hold.

The discretion granted in GR 12(b)(16) simply acknowledges that the Bar Association, not the court, will act as the employer in collective bargaining decisionmaking. This discretion, however, does not grant the Bar Association unfettered freedom over employment practices. The Bar Association is already subject to various state employment statutes administered by executive agencies, including the state workers' compensation act, RCW 51.12, wage and hour laws, RCW 49.46, the Employment Security Act, RCW 50.04, and the state Law Against Discrimination, RCW 49.60. Likewise, the Bar Association is treated as a public employer for the purposes of state employment programs, such as the Public Employees' Retirement System, WAC 415-02, and the Washington State Health Care Authority administered health insurance plans, WAC 182-08.

The majority unjustifiably fears the term "mandatory" without investigating the true impact of mandatory collective bargaining: PECBA actually imposes very little. The statute would guide the Bar Association's employment practices through three points: the initial representation election, RCW 41.56.070; certification of the collective bargaining representative, RCW 41.56.060, .080; and, if necessary, adjudication of unfair labor complaints, RCW 41.56.160, RCW 41.58.020. The Bar Association agreed prior to the initiation of this case to hold an election and to the composition of the bargaining unit for certification. Thus, the Amendment merely designates the Public Employment Relations Commission (PERC) as the supervisor of this process. RCW 41.56.070. The court retains

authority to review PERC's nonadjudicatory decisions as applied. *See International Ass'n of Fire Fighters, Local 1052 v. Public Empl. Relations Comm'n*, 29 Wn. App. 599, 602, 630 P.2d 470, *review denied*, 96 Wn.2d 1004 (1981).

If the Bar Association employees elect a bargaining representative, by no means a certainty 4 years after the original employees expressed interest in unionizing, the certified representative and the Bar Association will negotiate a collective bargaining agreement completely independent of PECBA. The Bar Association retains full discretion over the contours of any agreement; PERC has no authority to compel contract terms, including whether to appoint PERC as grievance arbitrator. Indeed, PECBA would have no other application to the Bar Association's activities unless an unfair labor dispute arose. Even in that case, PERC's authority is primarily procedural, confined to factfinding and applying PECBA. RCW 41.58.020. The agency lacks prosecutorial or independent investigatory authority, and only a court may enforce a PERC order. RCW 41.56.160(3).

Thus, PECBA would set the rules of collective bargaining and appoint the referee, but would not compel an outcome. It is evident the Bar Association would retain full discretion over the substantive aspects of collective bargaining. The only "mandatory" effect of PECBA is its requirement to engage in the process, a process to which the Bar Association has agreed.

## II

Not only are the statute and judicial rule reconcilable, PECBA does not constitute an impermissible intrusion into judicial function by either the legislative or executive branch.

The court has asserted a constitutional framework where "complete separation was never intended and overlapping functions were created deliberately." *In re Juvenile Director*, 87 Wn.2d 232, 242, 552 P.2d 163 (1976). Rather, separation of powers must be viewed concurrently with the system of checks and balances, creating a plan of overlapping functions that permits even some direct control by one branch

over another. *Juvenile Director*, 87 Wn.2d at 242-43; *see also Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 506, 585 P.2d 71 (1978); *Moran v. State*, 88 Wn.2d 867, 873, 568 P.2d 758 (1977). Thus, we have sought to balance the constitutional value of autonomy with the competing value of reciprocity. *Juvenile Director*, 87 Wn.2d at 248.

> Harmonious cooperation among the three branches is fundamental to our system of government. Only if this cooperation breaks down is it necessary for the judiciary to exercise inherent power to sustain its separate integrity. . . . The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another. . . .

*Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975).

A review of our previous decisions reveals three determinative factors in a separation of powers challenge to a legislative intrusion into the judicial sphere. First, the court has been willing to go a long distance to avoid declaring a separation of powers violation. The court will, as we should here, attempt to reconcile any apparent conflicts. *See Schwab*, 80 Wn.2d at 271; *Chi-Dooh Li*, 79 Wn.2d at 566; *Levy*, 23 Wn.2d at 617.

Second is the centrality of the judicial function: the court is more willing to permit legislative oversight of ancillary administrative functions. *See Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 453, 635 P.2d 730 (1981); *In re Bruen*, 102 Wash. 472, 479, 172 P. 1152 (1918). Moreover, the court has permitted a broad range of legislative intrusions into matters of inherent judicial authority over the bar, including matters more central to the judicial functions of the bar than employment practices, such as the establishment of a board of bar examiners, *Bruen*, 102 Wash. at 477, minimum requirements for bar membership, *Levy*, 23 Wn.2d at 614, and recommendations for procedures for bar regulation, *Graham v. State Bar Ass'n*, 86 Wn.2d 624, 633, 548 P.2d 310 (1976); *Schwab*, 80 Wn.2d at 271.

Finally, the court will avoid invalidating legislation on its face. *See Zylstra*, 85 Wn.2d at 748-49; *Schwab*, 80 Wn.2d at

271; *Levy*, 23 Wn.2d at 617. To this end, the court has permitted legislative regulation as long as the court retains final authority. *See Graham*, 86 Wn.2d at 633; *Bruen*, 102 Wash. at 477. Indeed, the only case holding a legislative action impermissibly usurped judicial authority occurred in *In re Bruen, supra*, where the court invalidated that portion of the State Bar Act delegating to the board of bar examiners the authority to issue final admission orders. *Bruen*, 102 Wash. at 479. Under PECBA the court retains both constitutional and statutory authority to protect itself from any undue executive encroachment by PERC. *Public Empl. Relations Comm'n v. Kennewick*, 99 Wn.2d 832, 840, 664 P.2d 1240 (1983); *Zylstra*, 85 Wn.2d at 748-49; RCW 41.56.165. As we have previously underscored, the facial constitutionality of PERC jurisdiction does not preclude a subsequent as applied challenge.

> [A] legislatively created bargaining scheme does not and cannot interfere with the ultimate power of the judiciary to administer its own affairs. Until and unless such a scheme interferes with the court's functioning, no separation-of-powers problem exists. . . .

*Zylstra*, 85 Wn.2d at 749.

## III

Beyond the constitutional arguments, the majority decision departs from this court's historically strong protection of collective bargaining rights. We have particularly emphasized effective protection of collective bargaining rights includes access to PERC jurisdiction:

> PERC jurisdiction is essential for enforcement of the labor laws, since neither the NLRB nor any other agency has jurisdiction. . . . While some labor law provisions are enforceable, others are essentially administrative tasks, such as supervising union elections and selecting bargaining units. Some administrative agency must have discretion to administer the applicable law.

*PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 119, 750 P.2d 1240 (1988) (quoting *Nucleonics Alliance, Local Union 1-369 v. WPPSS*, 101 Wn.2d 24, 35-36, 677 P.2d 108 (1984) (Utter, J., dissenting)). Denying Bar Association em-

ployees PECBA protection leaves them in the very position we have denounced in prior cases, where

> employee-employer disputes [are relegated] to whatever resolution method the employer is willing to agree to or else to a lawsuit, rather than to PERC with its expertise and ability to carry out the Act's mandate of uniform application of labor relations principles throughout public employment.

*PUD 1*, 110 Wn.2d at 120; *see also Kennewick*, 99 Wn.2d at 842.

## IV

It is true the court must "jealously" guard its sphere of authority to maintain our constitutional structure of separation of powers. *See Short v. Demopolis*, 103 Wn.2d 52, 65, 691 P.2d 163 (1984). But we must pick our fights well. We should not take such quick offense from this legislative action when reconciliation is possible and results in stronger protection of collective bargaining rights.

SMITH and MADSEN, JJ., concur with DOLLIVER, J.